[Cite as *State v. Howard*, 2011-Ohio-2862.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100240 |
| | | TRIAL NOS. B-0703493A |
| Plaintiff-Appellee, | : | B-0806325A |
| vs. | : | *D E C I S I O N.* |
| ANGELO HOWARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:    Affirmed in Part, Reversed in Part, Appellant
                              Discharged in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  June 15, 2011

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,*
Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Sarah M. Schregardus*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**SYLVIA S. HENDON, Judge.**

{¶1} Defendant-appellant Angelo Howard was indicted in the case numbered B-0703493A for offenses relating to the murders of Gino Booker and Tim Canady. Specifically, Howard was indicted for the aggravated murder and aggravated robbery of Gino Booker, the aggravated murder, aggravated robbery, and kidnapping of Tim Canady, the aggravated burglary of Krystal White's residence, the aggravated burglary of Sakinah Malik's residence, the kidnapping of Sakinah Malik, and two counts of having a weapon while under a disability. With the exception of the charges for having a weapon while under a disability, each offense carried weapons specifications.

{¶2} In the case numbered B-0806325A, Howard was indicted for offenses relating to the murders of Kevin Johnson and Kevin Redding. Specifically, Howard was charged with the aggravated murder and aggravated robbery of Kevin Johnson, the aggravated murder, aggravated robbery, and kidnapping of Kevin Redding, and having a weapon while under a disability. Again, with the exception of the charge for having a weapon while under a disability, each offense carried weapons specifications.

{¶3} Upon the state's motion, the indictments in the cases numbered B-0703493A and B-0806325A were joined for trial. Following a jury trial, Howard was found guilty of all offenses and accompanying specifications in the indictment in the case numbered B-0703493A. With respect to the offenses in the indictment in the case numbered B-0806325A, Howard was found guilty of the aggravated murder, aggravated robbery, and kidnapping of Kevin Redding. But he was acquitted of the

accompanying specifications for these offenses. He was also acquitted of the aggravated murder and aggravated robbery of Kevin Johnson, and of having a weapon while under a disability. The trial court then sentenced Howard to an aggregate term of 148 years' to life imprisonment.

{¶4} Howard appeals from these convictions and raises ten assignments of error for our review. We address these assignments out of order

### Statement of Facts

{¶5} Howard was found guilty of offenses stemming from his involvement in three separate criminal incidents that resulted in the murders of Gino Booker, Tim Canady, and Kevin Redding, respectively. The state's theory of these murders was that Howard and a group of accomplices, including Eugene Jackson, Carlos Jackson, Andre Thomas, Quinton Gill, Scott McCoy, and Raeshaun Hand, had been "hustling" drug dealers. Throughout 2002, this group of men had engaged in the robbery and murder of known drug dealers and would then sell the drugs obtained in the robberies for profit.

{¶6} We discuss the facts surrounding Howard's involvement in each criminal incident separately.

### 1. The Gino Booker Homicide

{¶7} The evidence presented at trial established that, at approximately 4:30 in the afternoon on October 16, 2002, Howard and Carlos Jackson had been standing outside a housing complex on Walters Ave. in Walnut Hills. They were talking to a group of people when Booker approached them and inquired about buying marijuana. Booker was not satisfied with the prices he was offered, and he then

produced his own bag of marijuana. Howard took the bag of marijuana to examine and smell. He then "checked" the marijuana, or refused to give it back. Booker reached for the marijuana, and Howard displayed his gun. When Booker attempted to reach for Howard's weapon, Howard fired his gun two times, hitting Booker once. Howard and Carlos Jackson then fled from the scene, and Booker died from injuries caused by the gunshot.

### 2. *The Tim Canady Homicide*

{¶8} On December 14, 2002, Howard, Andre Thomas, and a third accomplice had entered the home of Krystal White, Tim Canady's girlfriend, in the middle of the night. The men were armed and wore masks. White and Canady had been asleep in White's bedroom, and various other relatives and friends of White had been sleeping throughout the home. Howard and his accomplices dragged Canady out of White's bed and then moved White and the other residents into the dining room, where they were restrained and tied up with cords. Canady was questioned by the intruders about where he kept his supply of marijuana.

{¶9} Canady was handcuffed, and White and all the others were barricaded in the basement so that they could not escape. Howard and his accomplices then left with a beaten and handcuffed Canady in Canady's truck. After driving around, they eventually stopped, at Canady's direction, at Sakinah Malik's apartment in Clifton. Eugene Jackson remained in the truck with Canady, while Howard and Thomas entered Malik's apartment building. Howard and Thomas encountered Malik in the hallway as she was leaving for work. They forced her back into her apartment, placed a gun to her head, and demanded to know where "the stuff" was. Malik directed them to a duffel bag in her closet that contained Canady's marijuana. The men then

restrained Malik with an extension cord and put her in bed. As she struggled to get free, she heard a gunshot outside.

{¶10} After returning to Canady's truck with his bag of marijuana, Howard shot the handcuffed Canady in the back of his head two times.

### 3. The Kevin Redding Homicide

{¶11} On August 28, 2002, a group of men shot and killed Kevin Johnson as they attempted to rob him. This group included Andre Thomas, Harold Thomas, Raeshaun Hand, and Scott McCoy. After murdering Johnson, they found Kevin Redding asleep inside the truck that Johnson had abandoned as he fled from his assailants. The men drove off with Johnson's truck, holding Redding captive inside. They met Howard at some point shortly thereafter, and the entire group traveled to Eugene Jackson's home in Cheviot.

{¶12} Kevin Redding was taken into the basement of Jackson's home, where he was tied to a beam and beaten severely in an effort by Howard and the other men to discern the location of Kevin Johnson's drug stash. Redding eventually provided his attackers with Johnson's address. Using this information, Howard, Andre Thomas, Raeshaun Hand, and Eugene Jackson broke into Johnson's apartment and took drugs and personal items. After returning to Eugene Jackson's home, the group of men determined that Redding needed to be killed to prevent him from talking to the police. Howard announced that this crime was not his "baby," and that he would not be the one to kill Redding. Andre and Harold Thomas then took Redding into a wooded area in Fairmount, where they shot him.

*Joinder*

{¶13} In his first assignment of error, Howard argues that the trial court erred in allowing the joinder for trial of all charges in the cases numbered B-070493A and B-0806325A. The state had filed a pretrial motion to join all charges in these indictments. The trial court granted the state's motion over Howard's objections.

{¶14} Generally, a trial court's decision to join offenses for trial is reviewed for an abuse of discretion.[1] But here, although Howard properly objected to the state's pretrial motion for joinder, he failed to renew that objection at any point during the trial. Howard's failure to renew his objection resulted in the waiver of any issue concerning joinder.[2] But because the issue is relevant to Howard's tenth assignment of error regarding ineffective assistance of counsel, we hold that even if Howard had preserved his objection, the trial court did not commit an abuse of discretion in allowing joinder.

{¶15} Crim.8(A) governs joinder of offenses. It states that "[t]wo or more offenses may be charged in the same indictment * * *[if they] are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." And Crim.R. 13 governs joinder of indictments. It provides that "[t]he court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment

---

[1] *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 421 N.E.2d 1288.
[2] *State v. Robertson*, 1st Dist. Nos. C-070151 and C-070159, 2008-Ohio-2562, ¶11.

or information." Joinder is the rule rather than the exception, and it is favored by the law.[3]

{¶16} Howard bears the burden of demonstrating that he was prejudiced by the joinder of these offenses.[4] Howard has asserted that joinder was inappropriate and prejudicial because, under Evid.R. 404(B), evidence of the crimes stemming from each criminal incident would not have been admissible in a separate trial for the crimes stemming from a separate criminal incident. Once a defendant has asserted a claim of prejudice, the state may rebut the alleged prejudice in two ways.[5] First, the state may demonstrate that the evidence presented for each offense joined was simple and direct.[6] Or the state may rely on the "other acts" test to rebut prejudice. Under this test, offenses are properly joined when the state would have been permitted to introduce evidence of one offense in the trial of another. The state need only demonstrate that joinder was appropriate under one of these tests.[7]

{¶17} Here, we are persuaded that under Crim.R. 8(A) the offenses were properly joined for trial because each offense was of a same or similar character and was part of a course of criminal conduct. All crimes stemmed from Howard and his accomplices' plan to rob known drug dealers at gunpoint and then to sell the drugs obtained in the robberies for profit. Admittedly, the crimes against each victim were not identical, and each contained their own distinguishing characteristics. But the various offenses were committed in a sufficiently similar manner and were so clearly part of a course of criminal conduct that it was appropriate to join them for trial.

---

[3] *State v. Franklin* (1991), 62 Ohio St.3d 118, 122, 580 N.E.2d 1.
[4] *State v. Torres*, supra, 66 Ohio St.2d at 343.
[5] *State v. Franklin*, supra, 62 Ohio St.3d at 122.
[6] Id.
[7] Id.

{¶18} We further conclude that the state has countered Howard's claim of prejudice by demonstrating that each offense in the joined indictments was proved by simple and direct evidence. The murder and associated crimes against each victim occurred at different times and places. Each was supported by evidence independent from the others. The law is clear that "the jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated."[8] Although this case involved numerous offenses and an abundance of evidence, it relied on the type of uncomplicated and simple evidence that was capable of being segregated. In fact, the jury's acquittal of Howard on all offenses relating to Kevin Johnson demonstrates that the jury was capable of, and did, separate the evidence relating to each offense.

{¶19} The trial court did not abuse its discretion in joining all offenses in one trial. The first assignment of error is overruled.

### Sufficiency, Weight, and Rule 29

{¶20} In his third assignment of error, Howard argues that his convictions were not supported by sufficient evidence. In his fourth assignment of error he argues that his convictions were against the manifest weight of the evidence. And in his fifth assignment of error, Howard argues that the trial court erred in denying his Crim.R. 29 motion for an acquittal on all offenses.

{¶21} We first address whether Howard's various convictions were supported by sufficient evidence. When reviewing the sufficiency of the evidence, this court is not permitted to weigh the evidence.[9] We must review the record and

---

[8] *State v. Torres*, supra, 66 Ohio St.2d at 343.
[9] *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

determine whether, upon viewing all evidence and reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found all the elements of the offenses proved beyond a reasonable doubt.[10] We employ the same standard to determine whether the trial court properly denied a Crim.R. 29 motion for an acquittal.[11]

{¶22} To facilitate our analysis, we address the offenses stemming from each criminal incident separately. We begin with the incident culminating in the murder of Kevin Redding. As we have stated, Howard was found guilty of the aggravated robbery, aggravated murder, and kidnapping of Kevin Redding.

{¶23} R.C. 2911.01(A) governs the offense of aggravated robbery. This statute provides in relevant part that "[n]o person, in attempting or committing a theft offense * * *, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." With respect to this offense, the jury was specifically instructed that before it could find Howard guilty of aggravated robbery, it was required to find beyond a reasonable doubt that Howard "in purposely committing or attempting to commit a theft offense, as defined in Section 2913.01 of the Ohio Revised Code, to wit, knowingly obtained or attempted to obtain personal property or United States currency of Kevin Redding * * * had a deadly weapon on or about his person * * *." Howard's indictment for this offense was in accord with the jury instruction and referred to the theft of personal property or currency from Kevin Redding.

---

[10] Id.
[11] *State v. Jordan*, 167 Ohio App.3d 157, 2006-Ohio-2759, 854 N.E.2d 520, ¶49.

{¶24} The state presented testimony from two witnesses, Howard's co-defendants Eugene Jackson and Carlos Jackson, to establish Howard's role in Redding's murder. Eugene Jackson testified that he was called by Raeshaun Hand and told to come to Jackson's residence in Cheviot. When Jackson arrived, he found Redding tied to a beam and being beaten by Howard and Andre Thomas in an effort to obtain the location of Kevin Johnson's drugs. Redding eventually revealed this location, and Howard and his accomplices looted Johnson's home while Redding remained bound in Jackson's basement. The men later determined that Redding needed to be killed to prevent his identification of his assailants. Howard announced that he would not kill Redding, but would leave that task up to one of his accomplices. Redding was then murdered by Andre Thomas and Howard Thomas.

{¶25} Carlos Jackson's testimony was largely in line with that given by Eugene Jackson. He had not been present for any of the offenses committed against Redding, but had been informed about the crimes the following day. Carlos Jackson testified that Redding had been found asleep in Kevin Johnson's truck following Johnson's murder. Redding was then taken to Eugene Jackson's home, where his assailants, including Howard, interrogated him to obtain the location of Johnson's drugs. Once Johnson's address was obtained, his home was robbed. According to Carlos Jackson, Andre Thomas then killed Redding after Howard announced that he would not commit the murder.

{¶26} Following our review of the record, we are constrained to conclude that Howard's conviction for the aggravated robbery of Kevin Redding was not supported by sufficient evidence. The record contains no evidence that either Howard or his accomplices took any personal property or currency from Kevin

Redding. The men restrained Redding, beat him, and later murdered him. But no witness provided any testimony concerning an actual robbery of Kevin Redding. Arguably, Howard and his accomplices attempted to take from Redding his knowledge of Johnson's address and the location of Johnson's drugs. But we need not consider whether the theft of such knowledge or information would be sufficient as a "theft offense" to maintain a conviction for aggravated robbery under R.C. 2911.01 because both Howard's indictment for this offense and the relevant jury instruction referred to the theft of "personal property or United States currency of Kevin Redding." Because the record contains no evidence of such a theft from Redding, we hold that Howard's conviction for the aggravated robbery of Redding was not supported by sufficient evidence.

{¶27} Our determination with respect to the offense of aggravated robbery leads us to conclude that Howard's convictions for the aggravated murder and the kidnapping of Kevin Redding were also supported by insufficient evidence. Howard was found guilty of aggravated murder under R.C. 2903.01(B). This statute provides that "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit * * * kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape." In this case, the jury was instructed that it had to find that Howard had purposely caused the death of Redding while committing the offense of aggravated robbery, which was defined as the theft of personal property or currency from Kevin Redding. Howard was additionally convicted of kidnapping pursuant to R.C. 2905.01(A)(2). This statute provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the

other person * * * to facilitate the commission of any felony or flight thereafter." The jury was instructed that, in this case, the felony at issue was aggravated robbery, which had previously been defined as the theft of personal property or currency of Kevin Redding.

{¶28} Howard's convictions for the aggravated murder and kidnapping of Redding were contingent upon his commission of the aggravated robbery of Redding. And because we have concluded that the record does not contain sufficient evidence to support a conviction for the aggravated robbery, we must also conclude that there was insufficient evidence to support Howard's conviction for these two additional offenses.

{¶29} We now consider whether Howard's convictions stemming from the criminal incident culminating in the homicide of Gino Booker were supported by sufficient evidence. Howard was found guilty of the aggravated murder and aggravated robbery of Gino Booker and of having a weapon while under a disability.

{¶30} The jury was instructed that, to find Howard guilty of the aggravated robbery of Gino Booker, it had to find beyond a reasonable doubt that, in committing the theft of marijuana from Booker, Howard had a deadly weapon on or about his person and had displayed that weapon. And to find Howard guilty of the aggravated murder of Booker, the jury was instructed that it had to find that Howard had purposely caused the death of Booker while committing the offense of aggravated robbery, which was defined as the theft of marijuana from Booker.

{¶31} Carlos Jackson testified that Howard shot Booker after Booker had attempted to retrieve marijuana that Howard had taken from him. And Eugene Jackson witnessed Howard reveal a gun, heard two gunshots, and saw Booker

collapse. Viewing this evidence and all the other evidence adduced at trial in the light most favorable to the state, we conclude that the state presented sufficient evidence to support Howard's convictions for both the aggravated robbery of Booker pursuant to R.C. 2911.01(A)(1) and the aggravated murder of Booker pursuant to R.C. 2903.01(B).

{¶32} Howard was additionally found guilty of having a weapon while under a disability, which is governed by R.C. 2923.13. R.C. 2923.13(A)(3) states that "[u]nless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." Howard had stipulated that he been convicted of drug abuse and had not been relieved from that disability. His conviction for having a weapon while under a disability was supported by sufficient evidence.

{¶33} We now turn to Howard's convictions stemming from the criminal incident that culminated in the homicide of Tim Canady. As we have stated, Howard was found guilty of the aggravated murder, aggravated robbery, and kidnapping of Canady, the aggravated burglary of Krystal White's residence, the aggravated kidnapping of Sakinah Malik, the aggravated burglary of Malik's residence, and having a weapon while under a disability.

{¶34} We have previously defined these offenses, with the exception of aggravated burglary. The aggravated-burglary charges in this case were governed by R.C. 2911.11(A)(2), which provides in relevant part that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another

person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense * * * if [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

{¶35} With respect to the offense of aggravated murder, the jury was instructed that, to find Howard guilty of this offense, it had to find beyond a reasonable doubt that Howard had purposely caused the death of Canady while committing the offense of aggravated robbery and/or kidnapping. Aggravated robbery was defined in relevant part as the theft of marijuana from Tim Canady. And kidnapping was defined as the removal or restraint of Canady for the purpose of committing aggravated robbery. These definitions applied to each of the charged offenses stemming from this criminal incident, with the exception of the kidnapping charge relating to Sakinah Malik. That offense charged that Howard had removed or restrained Malik for the purpose of committing aggravated robbery, which was also defined in relevant part as the theft of marijuana from Canady.

{¶36} Carlos Jackson testified that Howard had entered White's residence without permission, had restrained the home's occupants with cords, had handcuffed Canady and driven him around the area in his van, and had shot him in the head after taking his marijuana. Sakinah Malik testified that two armed men had forced their way into her apartment, restrained her with a phone cord, and taken Canady's supply of marijuana. Eugene Jackson corroborated this testimony, stating that an armed Howard had taken Canady's supply of marijuana and shot Canady in the head.

{¶37} Viewing this evidence in the light most favorable to the prosecution, we hold that it was sufficient to support Howard's convictions stemming from this criminal incident.

{¶38} In summary, we conclude that Howard's convictions for the aggravated murder, aggravated robbery, and kidnapping of Kevin Redding were not supported by sufficient evidence and must be reversed. But the record contains sufficient evidence to support the remainder of Howard's convictions. The third and fifth assignments of error are sustained in part and overruled in part.

{¶39} We now consider Howard's argument that these remaining convictions were against the manifest weight of the evidence. When reviewing the weight of the evidence, this court must review the entire record, weigh the evidence, and consider the credibility of the witnesses to determine if the trier of fact lost its way and created a manifest miscarriage of justice in finding the defendant guilty.[12]

{¶40} To support his argument, Howard has noted the suspect nature of the testimony offered by Eugene Jackson and Carlos Jackson and has pointed out contradictions in these witnesses' testimony. We have reviewed the testimony of each witness in detail. And although the testimony of each witness is contradictory on particular details, their testimony is largely in harmony concerning Howard's role in each of these offenses. The jury was in the best position to judge the credibility of the witnesses. It was aware of the benefits that both Eugene Jackson and Carlos Jackson were receiving in return for their testimony, and it was instructed to consider their testimony with heightened scrutiny. We cannot conclude that the jury

---

[12] *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

lost its way and created a manifest miscarriage of justice in finding Howard guilty of these offenses. Accordingly, we overrule Howard's fourth assignment of error.

*Reliability Hearing*

{¶41} In his seventh assignment of error, Howard argues that the trial court erred in overruling his motion to exclude the testimony of his codefendants and his request for the trial court to conduct a reliability hearing to evaluate their testimony.

{¶42} Howard's codefendants Eugene and Carlos Jackson were the state's primary witnesses in the case against him. Howard asserts that the testimony of these witnesses was highly suspect because of the sentencing considerations that they were provided in exchange for their testimony. Howard argues that their testimony should have been excluded in its entirety or, at the very least, that the trial court should have conducted a hearing to evaluate its reliability.

{¶43} Howard has not provided any case law from Ohio in support of his assertion, but instead relies on several federal cases as well as Evid.R. 403 and 104. Evid.R. 403(A) provides that evidence is inadmissible if its probative value is outweighed by its prejudicial effect. And Evid.R. 104 provides that a trial court shall consider preliminary questions regarding the qualifications of a witness.

{¶44} This court has considered a nearly identical argument in *State v. McCoy*.[13] Notably, McCoy was a codefendant of Howard's and was found guilty of the aggravated murder and aggravated robbery of Kevin Johnson, as well as the aggravated robbery of Kevin Redding. In *McCoy*, this court rejected the suggestion that the testimony from a "cooperating witness," or codefendant, was unreliable as a

---

[13] *State v. McCoy*, 1st Dist. No. C-090599, 2010-Ohio-5810.

matter of law.[14] We recognized the procedural safeguards that should be present when a codefendant testifies, specifically that the jury be informed of the codefendant's plea agreement, that the testifying codefendant be subject to cross-examination, and that the jury be instructed to weigh the codefendant's testimony with care.[15]

{¶45} Applying these safeguards, the *McCoy* court held that the trial court was not required to hold a reliability hearing to evaluate the testimony of cooperating witnesses in that case, and that the credibility of such witnesses had been for the jury to decide.[16]

{¶46} We find that the procedural safeguards recognized by the *McCoy* court were also present in this case. Both Eugene Jackson and Carlos Jackson were vigorously questioned about the sentencing considerations that they had received in exchange for their testimony. Their plea agreements were available to Howard. And the jury was instructed to evaluate the testimony of these witnesses with heightened scrutiny and caution. We conclude that the credibility of these witnesses was for the jury to determine. The trial court did not err in failing to conduct a reliability hearing or in failing to exclude the testimony offered by these witnesses. The seventh assignment of error is overruled.

### *Allied Offenses of Similar Import*

{¶47} In his second assignment of error, Howard argues that the trial court erred by sentencing him on allied offenses of similar import that were subject to merger pursuant to R.C. 2941.25.

---

[14] Id. at ¶20.
[15] Id. at ¶18, citing *United States v. Dailey* (C.A.1, 1985), 759 F.2d 192, 196.
[16] Id. at ¶22.

{¶48} Under R.C. 2941.25, Ohio's multiple-count statute, a trial court may convict and sentence a defendant for two or more offenses " 'having as their genesis the same criminal conduct or transaction,' " if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense.[17]

{¶49} The Ohio Supreme Court recently changed the analysis to be applied in allied-offense cases in *State v. Johnson*.[18] In *Johnson*, the court abandoned the previous test established in *State v. Rance*[19] that required courts to compare elements of the offenses in the abstract. The court overruled *Rance* and held that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered."[20] Following *Johnson*, if the evidence presented at trial reveals that the state relied upon the same conduct to support both offenses, and that the offenses were neither committed separately nor with a separate animus as to each, then the defendant is afforded the protection of R.C. 2941.25, and the trial court errs in imposing separate sentences for both offenses.[21]

{¶50} In this case, Howard argues that the offenses of aggravated murder, aggravated robbery, and kidnapping were allied offenses of similar import subject to merger. R.C. 2903.01 governs the offense of aggravated murder. As relevant to this case, R.C. 2903.01(B) provides that "[n]o person shall purposely cause the death of

---

[17] *State v. Bickerstaff* (1984), 10 Ohio St.3d 62, 65-66, 461 N.E.2d 892, quoting *State v. Moss* (1982), 69 Ohio St.2d 515, 519, 433 N.E.2d 181. See, also, *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶51, and *State v. Evans*, 1st Dist. No. C-100028, 2011-Ohio-2356.
[18] *State v. Johnson*, supra, 2010-Ohio-6314.
[19] *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
[20] *State v. Johnson*, supra, syllabus.
[21] Id. at ¶51; R.C. 2941.25.

another * * * while committing or attempting to commit * * * kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape."

{¶51} R.C. 2911.01 governs the offense of aggravated robbery. R.C. 2911.01(A)(1) provides that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall [h]ave a deadly weapon on or about the offender's person." The kidnapping offenses in this case were governed by R.C. 2905.01(A)(2). This statute provides that [n]o person by force, threat, or deception * * * shall remove another from the place where the other is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter."

{¶52} We first consider the offenses of aggravated murder and aggravated robbery. Howard argues that these offenses are subject to merger as they relate to his convictions for offenses against both Gino Booker and Tim Canady. Prior to *Johnson*, the law was well settled that aggravated felony murder was not an allied offense of similar import to the underlying charged felony.[22] But following *Johnson*, courts must now reconsider this issue.

{¶53} We first examine Howard's convictions with respect to Gino Booker. The record indicates that Howard had taken Booker's marijuana, refused to return it, and brandished a gun in response to Booker's efforts to retrieve the drugs. Unable to recover his drugs, Booker reached for the gun and was shot by Howard. We determine that Howard's convictions for the aggravated murder and the aggravated robbery of Gino Booker were not subject to merger pursuant to R.C. 2941.25(B)

---

[22] See *State v. McCoy*, supra, 2010-Ohio-5810, at ¶62. See, also, *State v. Keene*, 81 Ohio St.3d 646, 668, 1998-Ohio-342, 693 N.E.2d 246.

because, despite the close temporal connection, they were committed separately and with a separate animus.

{¶54} The aggravated robbery of Howard was complete when an armed Howard took Booker's drugs and refused to return them. Following the completion of the robbery, Howard then shot Booker. These offenses were committed separately.

{¶55} With respect to animus, we note that aggravated murder requires proof of the specific purpose to kill.[23] After robbing Booker, Howard purposefully chose to kill him. The murder was in fact so unnecessary for the robbery itself that it demonstrated a significant independence from that robbery.[24] Here, Howard's actions evinced a separate animus for the aggravated murder, namely a specific purpose to kill that was not present for the commission of aggravated robbery. We accordingly conclude that Howard's convictions for the aggravated murder and aggravated robbery of Gino Booker were separately punishable under R.C. 2941.25(B).

{¶56} We now consider Howard's convictions for the aggravated murder and the aggravated robbery of Tim Canady. We determine that these offenses were clearly committed as separate acts and that the state did not rely on the same conduct to prove each of these offenses. Howard committed aggravated robbery by taking Canady's marijuana from Sakinah Malik's apartment. Canady was not present for the robbery. Howard then returned to the location where he had kept Canady restrained, and he purposely murdered Canady. As these offenses were committed separately, the trial court properly imposed a sentence for each offense.

---

[23] See R.C. 2903.01(B).
[24] See *State v. Shields*, 1st Dist. No. C-100362, 2011-Ohio-1912, ¶19.

{¶57} We next consider whether the offenses of aggravated murder and kidnapping committed against Tim Canady were allied offenses of similar import. And because these offenses were committed with a separate animus, they were not subject to merger. In *State v. Logan*, the Ohio Supreme Court established guidelines to determine whether the offense of kidnapping and a separate offense were committed with the same animus.[25] The *Logan* court held that "[w]here the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions."[26]

{¶58} In this case, Howard handcuffed Canady, removed him from Krystal White's home against his will, confined him to a van, and drove him around for a substantial period of time. Howard kept Canady restrained while he committed the aggravated robbery of Canady's marijuana. Only after this aggravated robbery was committed did Howard murder Canady. Clearly, the restraint of Canady was prolonged and substantial, and was not merely incidental to the aggravated murder. As these offenses were committed with a separate animus, the trial court properly imposed a sentence for each offense.

{¶59} Last, we consider whether aggravated robbery and kidnapping were allied offenses of similar import. Howard raises this argument with respect to crimes committed against Tim Canady. As we have stated, the kidnapping of Canady was

---

[25] *State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, syllabus.
[26] Id.

substantial and prolonged. It continued for a lengthy period of time before the aggravated robbery was committed, and it was not merely incidental to the aggravated robbery. We determine that these offenses were committed with a separate animus and were not subject to merger pursuant to R.C. 2941.25(B).

{¶60} In summary, the trial court properly imposed sentence on all offenses, and none of Howard's convictions involved allied offenses of similar import subject to merger pursuant to R.C. 2941.25. The second assignment of error is accordingly overruled.[27]

### Sentencing

{¶61} In his sixth assignment of error, Howard argues that the sentence imposed by the trial court was excessive because it included maximum, consecutive sentences for all offenses, resulting in an aggregate sentence of 148 years' to life imprisonment. We disagree. When reviewing a sentence, an appellate court must first determine whether the sentences imposed were clearly and convincingly contrary to law.[28] If they were not contrary to law, the reviewing court must then determine whether the trial court abused its discretion in imposing the sentences.[29]

{¶62} Here, the sentences imposed fell within the available sentencing ranges and were not clearly and convincingly contrary to law. Nor did the trial court abuse its discretion when imposing the sentences. Howard went on a crime spree

---

[27] In his appellate brief, Howard argues that his convictions for the aggravated robbery and the kidnapping of Sakinah Malik involved allied offenses of similar import. But Howard was not convicted of the aggravated robbery of Sakinah Malik, so we do not address this argument. Howard further argues that his convictions for the aggravated murder, aggravated robbery, and kidnapping of Kevin Redding involved allied offenses of similar import. But our conclusion that his convictions for these offenses were not supported by sufficient evidence has mooted Howard's argument with respect to allied offenses.
[28] *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.
[29] Id. at ¶14-17.

resulting in the murder, robbery, and kidnapping of multiple victims. Howard committed vicious crimes and showed little remorse.

{¶63} Howard further argues that the imposition of consecutive sentences was improper under the Ohio Supreme Court's decision in *Oregon v. Ice*.[30] But in *State v. Hodge*, the Ohio Supreme Court recently considered the effect of *Ice* on Ohio's sentencing laws, and it rejected the argument raised by Howard in this case.[31] In *Hodge*, the court stated that "[t]he United States Supreme Court's decision in *Oregon v. Ice* * * * does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in *State v. Foster*."[32] Trial courts need not engage in judicial fact-finding before imposing consecutive sentences.[33] Howard's argument is without merit, and his sixth assignment of error is overruled.

{¶64} In his eighth assignment of error, Howard argues that the trial court's sentencing entry was erroneous, as it stated that he was required to pay court costs when the court had explicitly waived those costs at the sentencing hearing.

{¶65} Howard correctly argues that, despite its oral waiver of court costs at the sentencing hearing, the trial court nonetheless imposed court costs upon him in its sentencing entry. The state concedes this error. Accordingly, Howard's eighth assignment of error is sustained. Upon remand, the trial court shall correct its sentencing entry to reflect that court costs have been waived.

---

[30] (2009), 555 U.S. 160, 129 S.Ct. 711.
[31] *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768.
[32] Id. at paragraph two of the syllabus.
[33] Id. at paragraph three of the syllabus.

*Motion in Limine*

{¶66} In his ninth assignment of error, Howard argues that the trial court erred in not granting his motion in limine to exclude the testimony of codefendant Carlos Jackson as hearsay. But prior to Jackson's testimony in a videotaped deposition being played for the jury, Howard withdrew his motion. Consequently, the trial court never formally ruled on the motion.

{¶67} Case law is clear that, with respect to motions in limine, "[a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during trial."[34] Here, Howard has failed to preserve this alleged error with a timely objection. In fact, Howard appears to have abandoned his argument altogether by withdrawing his motion in limine prior to the trial court issuing a formal ruling on the merits. The ninth assignment of error is overruled.

*Ineffective Assistance of Counsel*

{¶68} In his tenth assignment of error, Howard argues that he received ineffective assistance from his trial counsel. To demonstrate ineffective assistance, a defendant must show both that his counsel's performance was deficient, and that the defendant was prejudiced by this deficient performance.[35] Counsel will only be considered deficient if his or her conduct is deemed to have fallen below an objective standard of reasonableness.[36] To establish prejudice, the defendant must show that, but for counsel's performance, the outcome of the proceedings would have been

---

[34] *State v. Kuehne* (Mar. 6, 1996), 1st Dist. No. C-940971, quoting *State v. Grubb* (1986), 28 Ohio St.3d 199, 203, 503 N.E.2d 142.
[35] *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052.
[36] Id. at 688.

different.[37]   When reviewing counsel's performance, this court is highly deferential, and we begin with the presumption that counsel's performance was reasonable.[38]

{¶69}   Howard first argues that his counsel was ineffective for failing to renew his motion for relief from prejudicial joinder during the trial.   But given our conclusion that joinder was appropriate, we hold that Howard was in no manner prejudiced by his counsel's failure to renew this motion during the trial.

{¶70}   Howard next argues that his counsel was ineffective for failing to object to the state's violation of Crim.R. 16.   Howard asserts that the state violated Crim.R. 16 by failing to produce the plea agreements of Eugene and Carlos Jackson prior to trial, instead waiting to disclose these agreements during the trial.   We are not persuaded by Howard's assertion that the state violated Crim.R. 16.   Further, we hold that Howard was not prejudiced by his counsel's failure to obtain these plea agreements at an earlier date.   Both Eugene Jackson and Carlos Jackson were thoroughly questioned during trial regarding the content of their plea agreements and the potential benefits that they would receive by testifying against Howard.   The jury was able to consider such information when weighing the credibility of these witnesses.

{¶71}   Last, Howard argues that his counsel was ineffective for failing to object to the admission of a firearm that was allegedly used in the murder of Gino Booker.   During trial, the state admitted into evidence a nine-millimeter gun that was found near the Booker murder scene.   The state additionally admitted into evidence shell casings from a nine-millimeter gun that were found at the scene.   And the state presented testimony from a firearms examiner that these casings came from the

---

[37] Id. at 694.
[38] Id. at 689.

nine-millimeter gun. This evidence was relevant to the state's case, and counsel was not deficient for failing to object to its admission.

{¶72}  The tenth assignment of error is overruled.

### *Conclusion*

{¶73}  Howard's convictions for the aggravated murder, aggravated robbery, and kidnapping of Kevin Redding are not supported by sufficient evidence and are accordingly reversed.  Howard is discharged from further prosecution for these offenses.  This case is remanded for the trial court to correct its sentencing entry to reflect that court costs have been waived.  The judgment of the trial court is affirmed in all other respects.

Judgment accordingly.

SUNDERMANN, P.J., concurs.
CUNNINGHAM, J., concurs in judgment only.

Please Note:
    The court has recorded its own entry on the date of the release of this decision.