**[Cite as *State v. Howard*, 2022-Ohio-2159.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210285 |
| | | TRIAL NO. B-0703493A |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| ANGELO HOWARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:    June 24, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Ohio Innocence Project* and *Donald Caster,* for Defendant-Appellant.

**WINKLER, Judge**.

{¶1}   Defendant-appellant Angelo Howard appeals the common pleas court's judgment denying both of his Crim.R. 33(B) motions for leave to file a motion for a new trial.  Because the common pleas court did not determine whether Howard was unavoidably prevented from discovering the evidence upon which he now relies to support his motions for a new trial, we reverse the court's judgment and remand this cause for proceedings consistent with this opinion and the law.

### *Background*

{¶2}   In 2008, Angelo Howard was indicted for the 2002 murders (and related offenses) of Gino Booker, Tim Canady, Kevin Johnson, and Keith Redding. The state's theory of these murders was that Howard and a group of accomplices, including brothers Eugene and Carlos Jackson, Andre Thomas, Quinton Gill, Scott McCoy, and Raeshaun Hand, had been "hustling" drug dealers.  Throughout 2002, this group of men had engaged in the robbery and murder of known drug dealers and would then sell the drugs obtained in the robberies for profit.

{¶3}   Following a jury trial, Howard was convicted of the aggravated murders (and related offenses) of Booker, Canady, and Redding.  He was acquitted of the charged offenses related to the murder of Johnson.  The common pleas court sentenced him to an aggregate prison term of 148 years' to life imprisonment.

{¶4}   In *State v. Howard*, 1st Dist. Hamilton No. C-100240, 2011-Ohio-2862, *appeal not accepted*, 130 Ohio St.3d 1418, 2011-Ohio-5605, 956 N.E.2d 310, this court reversed Howard's convictions related to Redding, but affirmed Howard's convictions related to the murders of Booker and Canady.  In our decision, we set forth the following facts surrounding the homicide of Booker and Canady:

1.  **The Gino Booker Homicide**

    The evidence at trial established that, at approximately 4:30 in the

    afternoon on October 16, 2002, Howard and Carlos Jackson had been

standing outside a housing complex on Walters Ave. in Walnut Hills. They were talking to a group of people when Booker approached them and inquired about buying marijuana. Booker was not satisfied with the prices he was offered, and he then produced his own bag of marijuana. Howard took the bag of marijuana to examine and smell. He then "checked" the marijuana, or refused to give it back. Booker reached for the marijuana, and Howard displayed his gun. When Booker attempted to reach for Howard's weapon, Howard fired his gun two times, hitting Booker once. Howard and Carlos Jackson then fled from the scene, and Booker died from injuries caused by the gunshot.

### 2. The Tim Canady Homicide

On December 14, 2002, Howard, Andre Thomas, and a third accomplice had entered the home of Krystal White, Tim Canady's girlfriend, in the middle of the night. The men were armed and wore masks. White and Canady had been asleep in White's bedroom, and various other relatives and friends of White had been sleeping throughout the home. Howard and his accomplices dragged Canady out of White's bed and then moved White and the other residents into the dining room, where they were restrained and tied up with cords. Canady was questioned by the intruders about where he kept his supply of marijuana.

Canady was handcuffed, and White and all the others were barricaded in the basement so that they could not escape. Howard and his accomplices then left with a beaten and handcuffed Canady in Canady's truck. After driving around, they eventually stopped, at Canady's direction, at Sakinah Malik's apartment in Clifton. Eugene Jackson remained in the truck with Canady, while Howard and Thomas

entered Malik's apartment building. Howard and Thomas encountered Malik in the hallway as she was leaving for work. They forced her back into her apartment, placed a gun to her head, and demanded to know where "the stuff" was. Malik directed them to a duffel bag in her closet that contained Canady's marijuana. The men then restrained Malik with an extension cord and put her in bed. As she struggled to get free, she heard a gunshot outside.

After returning to Canady's truck with his bag of marijuana, Howard shot the handcuffed Canady in the back of his head two times.

*Id.* at ¶ 7-10.

{¶5} We held that the testimony of brothers Carlos and Eugene Jackson provided sufficient evidence to support Howard's convictions. With respect to Booker, we noted that Carlos testified that Howard shot Booker after Booker attempted to retrieve the marijuana that Howard had taken from him, and Eugene had witnessed Howard reveal a gun, heard two gunshots, and saw Booker collapse. *Id.* at ¶ 31. With respect to the aggravated murder and aggravated robbery of Canady, we noted that Carlos testified, "Howard had entered White's residence without permission, had restrained the home's occupants with cords, had handcuffed Canady and driven him around the area in his van, and had shot him in the head after taking his marijuana, [and] Eugene corroborated this testimony, stating that an armed Howard had taken Canady's supply of marijuana and shot Canady in the head." *Id.* at 36.

{¶6} Based on the outcome of his appeal, Howard is currently serving a prison sentence of 108 years to life.

### Postconviction Proceedings

{¶7} In 2014, Howard filed a Crim.R. 33(B) motion for leave to file a new-trial motion based on newly discovered evidence. Howard supported this motion with the affidavit of Andre Thomas who admitted that he, not Howard, had shot Canady.

4

At Howard's trial, Thomas had surprised the state by testifying that Howard was not involved in the murder of Canady but did not testify as to who had shot Canady. The common pleas court denied the motion for leave because Howard could not demonstrate that he had been unavoidably prevented from discovering Thomas's testimony. We affirmed the court's judgment on appeal in *State v. Howard*, 1st Dist. Hamilton No. C-140516 (Jun. 17, 2015), *appeal not accepted*, 144 Ohio St.3d 1440, 2015-Ohio-5648, 43 N.E.3d 451.

{¶8} In July 2018, the Ohio Innocence Project, working with Howard, sent a public records request to the Cincinnati Police Department seeking documents related to the murder investigation of Booker and Canady. In response, the following documents related to the Booker investigation, which Howard contends were never disclosed to the defense, were released: (1) "Six-Pack" photographic lineups with corresponding notes; (2) the fingerprint card of Michael Thompson, which had a post-it note attached that read, "Don't Release Just File"; (3) a fingerprint-image search result; and (4) an evidence-examination worksheet.

{¶9} The evidence-examination worksheet, which had been completed by Criminalist James Lawson, noted that four latent prints were lifted from sandwich-bag boxes found at the scene of Booker's murder and that one of the latent prints matched those of Michael Thompson. Further, a "value quality print" was lifted from the magazine of the 9 mm gun used to shoot Booker.

{¶10} The "six-pack" photographic lineup and the police officer's corresponding notes indicate that Britney Kelley, a witness to Booker's murder, was shown a lineup, which included Howard's photograph. However, after viewing the photographs, Kelley identified another person, not Howard, as the shooter.

{¶11} In March 2019, Howard filed a Crim.R. 33(B) motion for leave to file a new-trial motion on the basis of newly discovered evidence. In his motion, Howard argued that the state had failed to disclose to Howard's trial counsel evidence of latent

prints found at the crime scene that pointed toward an alternate suspect, Michael Thompson, and that a key witness, Kelley, had viewed a six-pack lineup that included Howard's photograph, and had pointed to the photograph next to Howard's and said, "He shot Gino, I don't know his real name, just his nickname." The person she identified was Jasper Jackson, also known as "Jabber."

{¶12} At the same time that Howard moved for leave to file a new-trial motion, he also applied for postconviction DNA testing, under R.C. 2953.71, of evidence recovered from each crime scene. From the Canady crime scene, Howard requested DNA testing for 14 items, some of which included cigarette butts, two 9 mm cartridge casings, the set of handcuffs cut from Canady's wrists, Candy's blue jeans, and the cords used to tie up Malik. From the Booker crime scene, Howard requested DNA testing on the murder weapon, a 9 mm semi-automatic handgun, four PMC 9 mm Luger cartridges as well as the two 9 mm shell casings found at the scene.

{¶13} After the state reported that it could not locate any of the evidence requested, the court held a hearing on the matter. At the hearing, it was demonstrated that in July 2012 the Hamilton County Court of Common Pleas had journalized an order that was captioned, "State of Ohio vs. Andre Thomas," with the case number "B-0703493," which ordered the county court reporter to transfer custody of the evidence in his or her possession related to the captioned case to the county prosecutor's property clerk for "disposal or return to owner where appropriate." (Andre Thomas was one of Howard's codefendants.) This order was signed by the trial judge and an assistant county prosecutor. The county then returned the evidence in its possession to the Cincinnati Police Department.

{¶14} Jennifer Schrage, the property-room manager for the city of Cincinnati, testified that the police department no longer had any of the evidence that had been returned. She testified that she completes affidavits approximately twice a year that are then submitted to an assistant solicitor with the city's law department. The

6

affidavits aver that evidence that the city wishes to destroy is contraband, forfeited, or unclaimed, and is no longer needed for court. The assistant solicitor then attaches the affidavit to a motion requesting leave from the common pleas court to destroy the evidence. In March 2013, a judgment entry with a case number that started with "M" was journalized ordering the destruction of a voluminous amount of evidence, from many different cases, including the evidence from the Canady and Booker crime scenes. The gun used to shoot Booker was not included in this order because it had been retained by the Hamilton County Coroner's Office for use in its reference library.

{¶15} In January 2020, the trial court denied Howard's application for postconviction DNA testing because the evidence had "been disposed of and is unavailable for testing." Howard did not appeal from this judgment.

{¶16} In November 2020, Howard filed another Crim.R. 33(B) motion for leave to file a new-trial motion on the basis of newly discovered evidence and prosecutorial misconduct. In this motion, Howard argued recent advances in DNA technology should have made it possible to prove his innocence through the forensic testing of evidence collected from the crime scenes but the state effectively precluded that testing by destroying evidence in contravention of Ohio law, specifically, R.C. 2933.82, which requires the state to preserve evidence that may contain biological material for at least 30 years where a defendant has been convicted of aggravated murder. Howard contends that the remedy for that misconduct is a new trial with a jury instruction regarding the spoliation of evidence.

{¶17} The common pleas court considered both the 2019 and 2020 motions for leave together and denied them, without a hearing, stating, "Having found the arguments by Defendant fail on the merits, this Court does not need to review whether Defendant's motions were even timely." Howard now appeals.

**Assignments of Error**

{¶18} In his first assignment of error, Howard argues that the common pleas court erred by denying his 2020 motion for leave to file a new-trial motion on the grounds of prosecutorial misconduct, *see* Crim.R. 33(A)(2), and newly discovered evidence, *see* Crim.R. 33(A)(6).

{¶19} A motion for a new trial on grounds of prosecutorial misconduct must be filed within 14 days of the return of the verdict, and a motion for a new trial on the grounds of newly discovered evidence must be filed within 120 days of the return of the verdict. If not filed within the applicable time frames, then the new-trial motion may be filed within seven days after the granting of leave to file a new-trial motion. Crim.R. 33(B).

{¶20} Because Howard's motion for a new trial was untimely, he had to request leave from the court. On a Crim.R. 33(B) motion for leave to move for a new trial on the basis of prosecutorial misconduct, the movant bears the burden of proving by clear and convincing evidence that he or she had been "unavoidably prevented" from timely filing the new-trial motion. When the ground for a motion for leave to file a new-trial motion is newly discovered evidence, the movant must show that he or she had been "unavoidably prevented" from timely discovering that evidence.

{¶21} In *State v. Carusone*, 1st Dist. Hamilton No. C-130003, 2013-Ohio-5034, ¶ 31, this court said:

> Crim.R. 33, by its terms, contemplates a bifurcated proceeding when a motion for a new trial [is filed out of time]. First, the court must review the motion for leave, along with any evidentiary material supporting the motion, and decide whether, under Crim.R. 33(B)'s unavoidable-prevention standard, leave to file a new-trial motion is warranted. If leave is not warranted, the matter is final, and the court may not proceed to the second step of the analysis and decide the new-trial motion. If

leave is warranted, the movant is afforded seven days to file his new-trial motion, and the court may then decide that motion on its merits.

**{¶22}** While this appeal was pending, the Ohio Supreme Court released *State v. Bethel*, Slip Opinion No. 2022-Ohio-783, which addressed, in part, new-trial motions. The *Bethel* court, in explaining why it was not addressing the merits of Bethel's new-trial motion, stated that "until a trial court grants leave to file a motion for a new trial, the motion for a new trial is not properly before the [trial] court." *Id.* at ¶ 41, citing *State v. Brown*, 8th Dist. Cuyahoga No. 95253, 2011-Ohio-1080, ¶ 14. In *Bethel*, the court found that the trial court had acted improperly by first denying Bethel's motion for a new trial on the merits and then denying Bethel's motion for leave to file the new-trial motion. Because of that error, the court said it would not review any challenges to the merits of Bethel's new-trial motion because it had not been properly before the trial court in the first instance. *Id.*

**{¶23}** Here, the common pleas court did not determine whether Howard had been unavoidably prevented from discovering the state's posttrial destruction of evidence *before* denying his Crim.R. 33(B) motion for leave. Instead, the common pleas court, considering the new-trial motion and finding it to be meritless, used that conclusion to support the denial of Howard's Crim.R. 33(B) motion for leave to file a new-trial motion. That was error. The new-trial motion was not properly before the court because the common pleas court had not granted leave to Howard to file a motion for a new trial. Further, and more importantly, a common pleas court may only grant a Crim.R. 33(B) motion for leave after finding that the movant was unavoidably prevented (1) from discovering the evidence upon which he or she now relies (when moving for leave to file a Crim.R. 33(A)(6) new-trial motion) or from timely filing a new-trial motion (when moving for leave to file a Crim.R. 33(A)(2) new-trial motion).

**{¶24}** Because the court did not determine whether Howard was unavoidably prevented from timely discovering the facts upon which he now relies or timely filing his

9

new-trial motion, the court's denial of Howard's 2020 Crim.R. 33(B) motion for leave is not supported by competent, credible evidence. *See State v. Schiebel*, 55 Ohio St.3d 71, 73, 564 N.E.2d 54 (1990) (where the proof required must be clear and convincing, a reviewing court will reverse a judgment not supported by competent, credible evidence). Accordingly, we sustain Howard's first assignment of error and reverse the common pleas court's judgment denying Howard's 2020 Crim.R. 33(B) motion for leave to file a new-trial motion. We remand this matter to the court to consider whether Howard was unavoidably prevented from timely discovering the evidence upon which he now relies or from timely filing his new-trial motion.

{¶25} We reach a similar resolution in Howard's second assignment of error, where he contends "the trial court erred in denying, without a hearing, [his] motion for leave to file a [Crim.R. 33(A)(6)] new-trial motion on the basis of improperly suppressed *Brady* evidence."

{¶26} *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), governs situations where the state withholds evidence that tends to exculpate a criminal defendant. "When the prosecution withholds material, exculpatory evidence in a criminal proceeding, it violates the due process right of the defendant under the Fourteenth Amendment to a fair trial." *State v. Johnston*, 39 Ohio St.3d 48, 60, 529 N.E.2d 898 (1988). *Brady* violations may be found regardless of whether the defense requested the evidence and "irrespective of the good faith or bad faith of the prosecution." *Brady* at 87.

{¶27} As noted above, in order to file a motion for a new trial based on newly discovered evidence that was discovered beyond the 120 days prescribed in Crim.R. 33, a petitioner must first file a motion for leave to file a delayed motion for a new trial. In it, the petitioner must show by clear and convincing proof that he has been unavoidably prevented from discovering the evidence upon which he now relies. Crim.R. 33(B). An evidentiary hearing is required on a motion for leave if the evidence

offered in support of the motion demonstrates on its face unavoidable prevention. *Carusone,* 1st Dist. Hamilton No. C-130003, 2013-Ohio-5304, at ¶ 4.

{¶28} "A party is unavoidably prevented from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for a new trial in the exercise of reasonable diligence." *State v. Gray,* 8th Dist. Cuyahoga No. 2010-Ohio-11, ¶ 17, quoting *State v. Lee,* 10th Dist. Franklin No. 05AP-229, 2005-Ohio-6374, ¶ 7. But the Ohio Supreme Court has recently held where the movant is asserting a *Brady* claim in a motion for a new trial, the defendant is "not required to show that he could not have discovered the suppressed evidence by exercising reasonable diligence[,] but instead a defendant satisfies the 'unavoidably prevented' requirement * * * by establishing that the prosecution suppressed the evidence on which the defendant [now] relies." *Bethel,* Slip Opinion No. 2022-Ohio-783, at ¶ 25, 29.

{¶29} In *Bethel,* the defendant submitted affidavits from two of the defendant's former trial counsel, which stated that the defendant and his legal team did not know about evidence (a police report) upon which he is now relying to support his motion for a new trial. The court, after noting that the state had not provided any support for its claim that the affidavits were insufficient or that the defendant needed additional evidence to prove that he was unaware of the report before trial, concluded that "the documents Bethel submitted * * * establish a prima facie claim that the prosecution had suppressed [the police report]." *Id.* at 30.

{¶30} Here, the common pleas court did not find that Howard was "unavoidably prevented" from discovering the evidence that he contends was suppressed by the state. Instead, it denied Howard's motion for leave on the basis that his new-trial motion was meritless. As we stated in our analysis of the first assignment of error, this was an improper basis for denying a Crim.R. 33(B) motion for leave to file a new-trial motion:

(1) the merits of the new-trial motion were not properly before the court because leave had not been granted and (2) leave to file a new-trial motion is based solely on the unavoidably-prevented standard. Therefore, we must reverse the court's judgment denying Howard's 2019 motion for leave to file a new-trial motion and remand the matter to the common pleas court to consider Howard's motion for leave in light of the unavoidable-prevention standard. Because Howard is alleging a *Brady* violation, the unavoidable-prevention standard is satisfied if the court finds the evidence was suppressed.

{¶31} We recognize that the common pleas court, when improperly considering the merits of the new-trial motion before granting leave, stated in its decision that the evidence "was in no way suppressed." Even if we construe this statement as a finding by the court that Howard had not satisfied the unavoidable-prevention standard, we still must reverse the court's judgment because the court abused its discretion by denying Howard's motion for leave without an evidentiary hearing. *See Carusone,* 1st Dist. Hamilton No. C-130003, 2013-Ohio-5304, at ¶ 4; *State v. Smith*, 1st Dist. Hamilton No. C190485, 2020-Ohio-6718, ¶ 17 (an evidentiary hearing is required if there is evidence of unavoidable prevention).

{¶32} Our review of the record demonstrates that there may have been suppression of the evidence at issue—"six-pack" lineups and accompanying notes, fingerprint card of Michael Thompson, finger-image search results, and an evidence-examination worksheet. For example, given that the identity of the shooter was an issue at trial, and although the common pleas court notes that there was a discussion of "fingerprints" in the record, the trial transcript is absent of any comment, question or discussion about the fact that fingerprints of someone other than Howard were found on items of evidence recovered from the crime scene and that a "value quality print," presumably not Howard's, was found on the gun magazine of the murder weapon. Further, even though the court notes that it was revealed that Kelley had identified

"Jabber" as the person who shot Booker, there was no mention that she made this identification after viewing a lineup that included Howard's photograph. Considering that Howard has maintained his innocence from the beginning, that there is no physical evidence that connects Howard to Booker's murder, and that the identity of the shooter was an issue at trial, the fact that all of this evidence speaks to the identity of the shooter yet was absent from the trial, tends to support a finding that this evidence was suppressed. Because there is evidence of suppression, an evidentiary hearing was required on Howard's motion for leave.

**{¶33}** Based on the foregoing, we sustain Howard's second assignment of error, reverse the trial court's judgment, and remand this matter to the common pleas court to conduct an evidentiary hearing on Howard's 2019 Crim.R. 33(B) motion for leave and determine whether he was unavoidably prevented from discovering the evidence upon which he now relies to support his new-trial motion.

**{¶34}** In conclusion, having sustained both assignments of error, we reverse the common pleas court's judgment denying the motions for leave and remand this matter to the court for proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

13