DECISION.
{¶ 1} Defendant-appellant Richard Ellison appeals his convictions for aggravated burglary, kidnapping, and abduction. After Ellison pleaded guilty to the charges, the trial court sentenced him to six years in prison. We affirm.
 I. A Confrontation {¶ 2} On October 10, 2004, Ellison appeared at his mother and stepfather's house, entering through the unlocked garage. After waiting three hours for them to come home, Ellison confronted his parents in the living room with duct tape, two pairs of handcuffs, a hammer, and a change of clothing. Ellison had also disconnected the phone.
 {¶ 3} Ellison, 55 years old at the time and a published author, claimed that he wanted to talk to his parents about long-standing family problems. Ellison's mother, stepfather, and sister had all been concerned for some time about Ellison's mental stability. Ellison stated that he went to see his parents that day "to stand up to what I believed to be some measure of corruption within the family leadership."
 {¶ 4} Ellison's mother and stepfather initially agreed to talk to him, but then his stepfather attempted to leave the house. Ellison prevented his stepfather from leaving, injuring him in the process. A little later, Ellison's mother attempted to call 911, but Ellison grabbed the phone from her.
 {¶ 5} After talking for three hours, Ellison left and went home. His parents called the police, who arrested Ellison later that night.
 {¶ 6} Ellison was indicted for aggravated burglary, burglary, two counts of kidnapping, and two counts of felonious assault. Ellison was initially found incompetent to stand trial. He was then sent to Twin Valley Behavioral Healthcare. After several months there, Ellison was found competent to stand trial.
 {¶ 7} Shortly before a jury trial was to begin, Ellison withdrew his plea of not guilty and pleaded guilty to one count each of aggravated burglary, kidnapping, and abduction. Before accepting Ellison's guilty pleas, the trial court conducted the required Crim.R. 11 colloquy. Ellison stated that he was making his pleas of his own free will and had not been threatened or promised anything. Ellison stated he understood that the trial court would consider a sentence from zero to six years. Ellison acknowledged his signature on the guilty-plea form and stated that he had discussed it with his attorney. Ellison further stated that he understood he was giving up his right to a trial, either by a jury or by the court. When asked if he was satisfied with his trial counsel's work on his case, Ellison replied, "Very much so."
 {¶ 8} The trial court found Ellison guilty and set a date for sentencing. About eight weeks later, before being sentenced, Ellison filed two new motions. One was to withdraw his guilty pleas and the other sought relief for ineffective assistance of counsel.
 {¶ 9} At the sentencing hearing, the trial court first considered Ellison's motions. Ellison's counsel argued that Ellison had been unable to grasp the ramifications of his pleas and that they had discussed the pleas for only about an hour before Ellison accepted them. Ellison told the court that he would be willing to retract his motion to withdraw the pleas provided that his sentence would not exceed the time that he had already served in jail.
 {¶ 10} The trial court declined Ellison's offer and overruled both of his motions. The court then sentenced Ellison to three years each for aggravated burglary and kidnapping, to be served consecutively, and to five years for the abduction, to be served concurrently with the other two sentences.
 II. Guilty Pleas {¶ 11} Ellison raises four assignments of error. First, he argues that the trial court improperly denied his motion to withdraw his guilty pleas.
 {¶ 12} A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing.[1] Even though the general rule is that motions to withdraw guilty pleas before sentencing should be freely and liberally granted, the decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court.[2]
 {¶ 13} In determining whether the trial court abused its discretion, we look at a series of factors and determine if the trial court complied with them.[3] Those factors include (1) whether the defendant was represented by highly competent counsel; (2) whether the defendant was afforded a complete Crim.R. 11 hearing before entering the plea; (3) whether the trial court conducted a full and impartial hearing on the motion to withdraw the plea; (4) whether the trial court gave full and fair consideration to the motion; (5) whether the motion was made within a reasonable time; (6) whether the motion set out specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges and the possible penalties; (8) whether the defendant was possibly not guilty of the charges or had a complete defense to the charges; and (9) whether the state would have been prejudiced by the withdrawal.[4]
 {¶ 14} The record indicates that the trial court cited these factors and thoroughly considered and addressed each before denying Ellison's motion to withdraw his guilty pleas. The trial court found that Ellison had been represented by highly competent counsel at his plea hearing, and that he had been given his Crim.R. 11 rights and had stated that he understood them, as well as the nature of the charges and possible penalties.
 {¶ 15} The trial court also found that Ellison had filed his motion to withdraw his pleas within a reasonable time. The trial court next found that Ellison had stated his reasons for wanting to withdraw his guilty pleas: that his pleas were hastily made and were not in his best interest. The trial court then found that it was not a possibility that Ellison was not guilty of the charges. Finally, the trial court found that the state would have been prejudiced if Ellison's pleas were withdrawn.
 {¶ 16} On appeal, Ellison focuses on the factor that he was possibly not guilty of the charges. In the hearing before the trial court, Ellison argued that he was not guilty because he had lacked a criminal intent to commit the offenses. On appeal, he further claims that many facts in the record support that he could have been found not guilty.
 {¶ 17} But Ellison's contention that he is possibly not guilty of the offenses is undercut by his attempt at the hearing to renegotiate his guilty pleas for a guarantee of time already served. That Ellison would accept the guilty pleas in exchange for a guaranteed lesser sentence indicated that his motion to withdraw his guilty pleas was a negotiation tactic rather than the representation of a bona fide belief that he would be found not guilty at trial.
 {¶ 18} We conclude that the trial court properly considered and addressed each of the applicable factors before denying Ellison's motion to withdraw his guilty pleas. We further conclude that the record does not support that he was rushed into making his pleas. Though there seemed to be cogent reasons for allowing the withdrawal in this case, the abuse-of-discretion standard is there because we appellate judges were not present and cannot have the same "feel" for the case as does a trial court. For these reasons, the trial court did not abuse its discretion in denying Ellison's motion to withdraw his guilty pleas. Consequently, we overrule his first assignment of error.
 III. Effective Assistance of Counsel {¶ 19} In his second assignment of error, Ellison argues that he received ineffective assistance of trial counsel. Specifically, Ellison contends that his trial counsel's performance was deficient because she allowed him to plead guilty when he was unable to fully grasp the ramifications of his pleas. Similarly, in his third assignment of error, Ellison argues that his guilty pleas were made unknowingly and unintelligently.
 {¶ 20} To establish ineffective assistance of counsel, Ellison must demonstrate that his counsel's performance fell below an objective standard of reasonable competence, and that there was a reasonable probability that, but for such deficiency, the outcome of the trial would have been different.[5]
Judicial scrutiny of counsel's performance must be highly deferential.[6] A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[7]
 {¶ 21} We note that Ellison's initial trial counsel raised the issue of Ellison's competency, and that Ellison was at first found to be incompetent to stand trial. But upon treatment and further evaluation, Ellison was found competent to stand trial.
 {¶ 22} At the hearing on Ellison's motion to withdraw his guilty pleas, Ellison's counsel stated that the time in which Ellison had to consider making his guilty pleas would have been sufficient for most defendants. She then stated that she believed Ellison had a "complicated and deliberate mental process" and that he "was unable to fully grasp all of the ramifications of his plea." Other than this statement, made after the fact and offered in support of Ellison's motion to withdraw his guilty pleas, there is nothing in the record that would indicate that Ellison did not understand or fully grasp the ramifications of pleading guilty. In addition, nothing in the record demonstrates that Ellison's trial counsel thought that he did not understand his pleas or that she failed to properly represent him.
 {¶ 23} When Ellison pleaded guilty, the trial court conducted a thorough colloquy with Ellison. Ellison stated repeatedly that he understood everything in the guilty-plea form. He acknowledged that he understood the charges and possible penalties, and stated that he was pleading under his own free will. The trial court asked Ellison if he had discussed the guilty-plea form with his counsel, and Ellison replied, "She read every word, and I understand every word." Ellison also said that he was very satisfied with his trial counsel's representation. Furthermore, there are numerous references in the record to the fact that Ellison was highly intelligent and articulate, more so than the typical defendant.
 {¶ 24} We conclude that Ellison has failed to demonstrate that his guilty pleas were made unknowingly or unintelligently or that he received ineffective assistance of counsel. Therefore, we overrule Ellison's second and third assignments of error.
 IV. Allied Offenses of Dissimilar Import {¶ 25} In his fourth assignment of error, Ellison argues that the trial court erred when it convicted and sentenced him for allied offenses of similar import, specifically the kidnapping and abduction offenses.
 {¶ 26} Where conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the defendant may be convicted of only one of the offenses.[8]
But where the conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the defendant may be convicted of all the offenses.[9]
 {¶ 27} As the state correctly points out, the fact that there were separate victims for the offenses of kidnapping and abduction means that the offenses were of dissimilar
import.[10] Ellison was convicted of kidnapping his stepfather and abducting his mother. Therefore, in this case, the kidnapping and the abduction could not have been allied offenses of similar import.
 {¶ 28} Consequently, we overrule Ellison's fourth assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Hildebrandt, P.J., and Hendon, J., concur.
[1] See State v. Xie (1992), 62 Ohio St.3d 521,584 N.E.2d 715, paragraph one of the syllabus.
[2] Id. at 527.
[3] See State v. McIntosh, 160 Ohio App.3d 544,2005-Ohio-1760, 828 N.E.2d 138, at ¶ 3.
[4] Id., citing State v. Fish (1995), 104 Ohio App.3d 236,240, 661 N.E.2d 788.
[5] See Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraphs two and three of the syllabus.
[6] See Strickland v. Washington, supra, at 689; State v.Bradley, supra, at 142.
[7] Id.
[8] R.C. 2941.25(A).
[9] R.C. 2941.25(B).
[10] See State v. Jones (1985), 18 Ohio St.3d 116, 118,480 N.E.2d 408; see, also, State v. Roberts (Nov. 9, 2001), 1st Dist. No. C-000756.