[Cite as *State v. Anderson*, 2012-Ohio-3347.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110029 |
| | | TRIAL NO. B-1001973-A |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| RAYSHAWN ANDERSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Sentences Vacated, and Cause Remanded

Date of Judgment Entry on Appeal: July 27, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bruce K. Hust*, for Defendant-Appellant.

Please note: This case has been removed from the accelerated calendar.

**CUNNINGHAM, Judge.**

{¶1} Defendant-appellant Rayshawn Anderson appeals the sentences imposed by the trial court after Anderson had entered guilty pleas to aggravated robbery, with an accompanying firearm specification, and kidnapping. Along with Alec Cooper and Robert Jackson, Anderson had robbed the Fifth Third Bank on Erie Avenue in Cincinnati. Cooper had wielded a gun while Anderson and Jackson jumped the bank counters and collected cash. Ten persons were in the bank at the time of the robbery.

{¶2} Anderson has raised two assignments of error. First, he argues that the trial court erred in imposing separate sentences for the aggravated robbery and kidnapping offenses because they were allied offenses of similar import committed by the same conduct and with the same animus. Next, he argues that the trial court failed to properly notify him of his postrelease-control obligations. Finding merit in both assignments of error, we vacate the sentences for the aggravated robbery and kidnapping offenses and remand this case to the trial court for resentencing on only one of those offenses. We sustained similar assignments of error in an earlier appeal by Anderson's gun-wielding co-defendant. *See State v. Cooper*, 1st Dist. Nos. C-110027 and C-110028, 2012-Ohio-555, *appeal not accepted*, ___ Ohio St.3d ___, 2012-Ohio-___, ___ N.E.2d ___, (leave to appeal denied, and appeal dismissed "as not involving any substantial constitutional question," by Entry, Case No. 2012-0554 (June 20, 2012).

### *Anderson's Guilty Pleas and Sentences*

{¶3} The record reflects that Anderson was indicted for a single count of aggravated robbery, a single count of robbery, ten counts of kidnapping, and a single count of having a weapon while under the disability of a prior juvenile adjudication. All the counts, except the robbery and the weapons offense, were accompanied by firearm

specifications. None of the counts alleged that Anderson had taken any property belonging to the bank's employees or patrons.

{¶4} The state filed a bill of particulars for co-defendants Anderson and Cooper that provided:

> On or about February 17, 2010, at approximately 0944 hours, in the vicinity of Fifth Third Bank, at 2632 Erie Ave., Robert Jackson and Rayshawn Anderson and Alec Cooper entered the bank. While the co-Defendants removed US currency from the registers, the Defendant was holding the victims; [sic] Artina Williams, Lillie Smith, Christie Miller, David Recker, Frank Winster, Amanda Henry, David Fender, Gina Hafner, Douglas Barnaclo, and Justin Bendi at gunpoint. The Defendants fled the bank to a stolen vehicle. The Defendant has a prior Domestic Violence conviction in the Hamilton County, Ohio Juvenile Court, which precludes defendant from possessing a firearm.
>
> The indictment is hereby incorporated into this Bill of Particulars.

{¶5} Following a plea hearing, Anderson withdrew his not guilty pleas and pled guilty to aggravated robbery, an accompanying firearm specification, and one count of kidnapping bank employee Douglas Barnaclo. In exchange for his guilty pleas, the state dismissed the remaining charges and firearm specifications.

{¶6} At Anderson's plea hearing, the assistant prosecuting attorney read the following facts into the record:

[T]his is the indictment to the codefendant to [Cooper's] case that pled last week. Basically, in addition to the indictment, it took place at 2632 Erie Avenue, which is in the City of Cincinnati, Hamilton County, Ohio. It's a Fifth Third Bank, around 9:45 in the morning. There were three robbers. Mr. Anderson, Mr. Cooper and then a Mr. Jackson. Mr. Cooper pled on, I believe, the 8th last week; and Jackson is assigned to another courtroom. The three of them went in. One of them had a gun. Two people went over the counter. Customers and managers were terrorized.

One of the individuals was counting down the seconds. It was a very well planned robbery. They got in a waiting car, however, what happened as you remember, Judge, the dye pack exploded, it released like a tear gas type of substance. Mr. Anderson, I think in his confession, said that was choking him. Everything had to be thrown out of the car. They tried to escape on foot and [were] caught a short time later.

{¶7} At Anderson's sentencing hearing, conducted before the effective date of Am.Sub.H.B. 86, the trial court stated that it had read the victim-impact statements, the arresting officer's statement, and the presentence investigation report. The court recounted the substantial emotional impact the bank robbery had on several of the victims. The trial court did not mention Barnaclo's victim-impact statement. After listening to statements from Anderson's relatives and receiving the arguments of the state and of Anderson's counsel, the court addressed Anderson directly.

4

{¶8}    The trial court once again explained to Anderson the maximum sentences that could be imposed for the two offenses and the single firearm specification.  The trial court informed Anderson that the state had requested near-maximum, consecutive sentences of incarceration totaling approximately 20 years.  Anderson's trial counsel had asked the court to impose a sentence of less than 10 years.

{¶9}    The trial court then explained to Anderson:

> Here are the things that I give credit for in regards to the plea.  So number one, you pled to this and cooperated with the police.  So therefore, I'm not going to touch the maximum.
>
> And number two, of course, you made a full confession.
>
> Number three, that my understanding is that you didn't handle [the gun].  Please correct me, Mr. Anderson.  You're the individual * * * who jumped the counter and grabbed the money, am I correct, or am I wrong?

{¶10}    Anderson answered, "You're right, ma'am."

{¶11}    The trial court then noted that Anderson had not participated in Cooper's earlier robbery of a Cincinnati credit union.    *See Cooper,* 1st Dist. Nos. C-110027 and C-110028, 2012-Ohio-555, at ¶ 3.  After verifying that Anderson had already been incarcerated for ten months, the trial court stated, "I'm giving you also credit for your age and no prior adult record."  Anderson had turned 18 years old just before the sentencing hearing.

{¶12}    The trial court then sentenced Anderson to a non-maximum six-year prison term for the aggravated-robbery offense.  It imposed a three-year term for the firearm specification which, by operation of law, was to be served consecutive to the six-year term.  The court then imposed another six-year prison term for the kidnapping of

Barnaclo. But it ordered this term to be served concurrently with the term imposed for aggravated robbery. Thus, the aggregate prison term was nine years.

### *Allied-Offenses Analysis*

{¶13}   In his first assignment of error, Anderson argues that his convictions for aggravated robbery and kidnapping were allied offenses of similar import subject to merger, committed neither separately nor with a separate animus as to each. Therefore, he contends, the trial court violated the protections of R.C. 2941.25, Ohio's multiple-count statute, by convicting him of both offenses. We agree.

{¶14}   We note that Anderson has waived all but plain error by failing to raise any objection to the imposition of multiple punishments at the sentencing hearing. *See State v. Fields*, 97 Ohio App.3d 337, 344, 646 N.E.2d 866 (1st Dist.1994); *see also State v. Drummond*, 1st Dist. No. C-110011, 2011-Ohio-5915, ¶ 4. But the Ohio Supreme Court held recently that a "sentence that contains an allied-offenses error is contrary to law" under R.C. 2953.08(A)(4). *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 14, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 26. Thus the imposition of multiple punishments for allied offenses of similar import is reviewable under plain error even if a defendant has entered into a plea bargain and even if the sentence was an agreed sentence under R.C. 2953.08(D). *See Underwood* at ¶ 31-33; *see also State v. Warner*, 1st Dist. No. C-110198, 2012-Ohio-716, ¶ 3; *State v. Lewis*, 12th Dist. No. CA2008-10-045, 2012-Ohio-885, ¶ 15; *State v. Flagg*, 8th Dist. Nos. 93248 and 93279, 2010-Ohio-4247, ¶ 46. Thus Anderson's plea to multiple counts does not affect the General Assembly's requirement that the trial court merge allied offenses

at sentencing, and does not bar appellate review of the sentence. *See* R.C. 2941.25; *see also Underwood* at ¶ 26.

{¶15} Under R.C. 2941.25, Ohio's multiple-count statute, a trial court, in a single proceeding, may convict a defendant for two or more offenses having as their genesis the same criminal conduct or transaction, if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *See State v. Bickerstaff*, 10 Ohio St.3d 62, 65-66, 461 N.E.2d 892 (1984); *see also State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 51. Unless committed separately or with a separate animus, allied offenses must be merged for purposes of sentencing following the state's election of which offense should survive. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraph two of the syllabus.

{¶16} The Ohio Supreme Court has "consistently recognized that the purpose of R.C. 2941.25 is to prevent shotgun convictions, that is, multiple * * * punishments heaped on a defendant for closely related offenses arising from the same occurrence. * * * When 'in substance and effect but one offense has been committed,' the defendant may be convicted of only one offense." *Johnson* at ¶ 43, citing *Maumee v. Geiger*, 45 Ohio St.2d 238, 242, 344 N.E.2d 133 (1976), and quoting *State v. Botta*, 27 Ohio St.2d 196, 203, 271 N.E.2d 776 (1971); *see also* 1973 Legislative Service Commission comments to 1972 Am.Sub.H.B. No. 511 (enacting, inter alia, R.C. 2941.25 and R.C. 2905.01, the kidnapping statute).

{¶17} In deciding whether to afford a defendant the protections of the multiple-count statute, "the intent of the General Assembly is controlling." *Johnson* at ¶ 46. "The General Assembly has the power to define criminal offenses in any manner it chooses, so long as it does not violate pertinent constitutional provisions." *State v.*

*Logan*, 60 Ohio St.2d 126, 134-135, 397 N.E.2d 1345 (1979); *see Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are "multiple" under R.C. 2941.25 is essentially one of legislative intent); *but see Dept. of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 800, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (Scalia, J., dissenting) (any restriction on "multiple punishments * * * derives exclusively from the due process requirement of legislative authorization").

{¶18}    While R.C. 2941.25 has never been amended, commentators, and the supreme court itself, have acknowledged that the test used to determine whether two allied offenses are subject to merger has expanded and contracted in "accordion-like" fashion over the 38 years since enactment of the multiple-counts statute.    Parson, *Punish Once, Punish Twice: Ohio's Inconsistent Interpretation of Its Multiple Counts Statute*, 36 Cap.U.L.Rev. 809, 823 (2008); *see also Johnson* at ¶ 10-40.    In late 2010, the Ohio Supreme Court abandoned its prior abstract-elements-only test for determining when two allied offenses are subject to merger.    *See Johnson*, syllabus.

{¶19}    Under *Johnson*, courts now determine the General Assembly's intent to provide or restrict multiple punishments for a single course of conduct "by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct." *Id.*; *compare State v. Stall*, 3d Dist. No. 3-10-12, 2011 Ohio 5733, ¶ 15 (the determination of the General Assembly's intent in allied-offense cases is a question of law that is reviewed de novo), *with State v. Williams*, 8th Dist. No. 94616, 2011-Ohio-925, *discretionary appeal accepted*, 129 Ohio St.3d 1474, 2011-Ohio-4751, 953 N.E.2d 841 (oral argument heard in supreme court, on March 21, 2012, on state's appeal arguing that a trial court's determination not to afford

the protections of the multiple-count statute should be affirmed unless it exhibits an abuse of discretion).

{¶20}   In *Johnson*, the Ohio Supreme Court abandoned the prior abstract-elements-only test and held that "when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson* at syllabus.   Although the justices could not reach a majority opinion with regard to the analysis that courts should use in determining whether two allied offenses are subject to merger under R.C. 2941.25(A), they uniformly agreed that the conduct of the accused must be considered.   *See id.*; *see also id.* at ¶ 47-52 (Brown, C.J.); *id.* at ¶ 59-71 (O'Connor, J.); *id.* at ¶ 72-83 (O'Donnell, J.).   Therefore, we look to the evidence adduced below, and if that evidence reveals that the state relied upon the "same conduct" to prove the two offenses, and that the offenses were committed neither separately nor with a separate animus as to each, then the defendant is afforded the protections of R.C. 2941.25, and the trial court errs by imposing separate sentences for the offenses. R.C. 2941.25(A); *see also* R.C. 2941.25(B); *Johnson* at ¶ 56.

{¶21}   To consider Anderson's conduct in its proper context, we must identify the conduct proscribed by the statutory sections to which Anderson had pled guilty.   Anderson entered a plea to aggravated robbery under R.C. 2911.01(A)(1), which provides that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."   He also pleaded guilty to kidnapping, under R.C. 2905.01(A)(2), which provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is

found or restrain the liberty of the other person * * * to facilitate the commission of any felony or flight thereafter."

{¶22} In *State v. Chaffer*, an earlier bank-robbery, multiple-count case resolved in the trial court by the entry of guilty pleas, we relied upon the facts as set forth in the indictment, bill of particulars, and plea-hearing materials, including a recitation of the facts surrounding the offenses, to determine the defendant's conduct. *See* 1st Dist. No. C-090602, 2010-Ohio-4471, ¶ 13; *see also Cooper*, 1st Dist. Nos. C-110027 and C-110028, 2012-Ohio-555, at ¶ 15; *compare State v. Wesseling*, 1st Dist. No. C-110193, 2011-Ohio-5882, ¶ 6 (no plain error found where there was no recitation of the facts beyond the reading of the indictment). We do the same here. Those facts demonstrate that the aggravated-robbery and kidnapping offenses were based upon Anderson's actions in jumping over the counter and taking the bank's money, while Cooper brandished a handgun to move Barnaclo and the others to a common area in the bank. Co-defendant Cooper's conduct in moving and restraining Barnaclo with a handgun so that all the defendants could take the bank's money satisfies the elements of both the aggravated-robbery and the kidnapping offenses. Because the state relied upon the same conduct to demonstrate both offenses, the aggravated robbery and kidnapping were allied offenses not committed separately. *See Johnson* at ¶ 49 and 51; *see also Bickerstaff,* 10 Ohio St.3d at 65-66, 461 N.E.2d 892; *Cooper* at ¶ 15.

{¶23} Having determined that in this case aggravated robbery and kidnapping were allied offenses of similar import, our analysis moves to a further review of Anderson's conduct to consider, pursuant to R.C. 2941.25(B), whether the offenses were committed separately or with a single animus.

{¶24} These offenses were not committed separately. The record does not reflect a temporal or spatial separateness in the offenses. *See State v. Jackson*, 1st Dist.

No. C-090414, 2010-Ohio-4312, ¶ 26. The robbery lasted about 90 seconds, and Cooper held the bank employees and patrons at gunpoint for approximately 45 seconds. The perpetrators fled immediately after obtaining the bank's property. The kidnapping and the bank robbery clearly involved one sustained, continuous act under R.C. 2941.25(B).

{¶25} As the Ohio Supreme Court has noted, the commission of aggravated robbery necessarily entails the restraint of the victim. *See State v. Jenkins*, 15 Ohio St.3d 164, 198, 473 N.E.2d 264 (1984), fn. 29 ("kidnapping is implicit within every aggravated robbery"); *see also Logan*, 60 Ohio St.2d at 130, 397 N.E.2d 1345. In addition, the court has provided guidelines for determining whether the restraint or movement of the victim is "penologically significant" apart from the aggravated robbery. *Logan* at 135.

{¶26} Where "the restraint is prolonged, the confinement is secretive, or the movement is so substantial as to demonstrate a significance independent of the robbery, there exists a separate animus, a separate 'immediate motive,' to support the kidnapping conviction." *Chaffer*, 1st Dist. No. C-090602, 2010-Ohio-4471, at ¶ 11, quoting *Logan* at syllabus. And "where the asportation or restraint exposes the victims to a substantial increase in the risk of harm separate and apart from the underlying crime of robbery, a separate animus [also] exists for kidnapping." *Id.*

{¶27} For example, if, instead of pointing his gun at a person inside a bank, a perpetrator purposely kills a victim, the trial court could impose multiple punishments. The perpetrator's conduct would demonstrate a separate immediate purpose to kill while committing the aggravated robbery. *See State v. Tibbs*, 1st Dist. No. C-100378, 2011-Ohio-6716, ¶ 48-49 (shooting a victim in the face and head from close range during an aggravated robbery demonstrated a specific intent to kill). Since the

11

aggravated felony murder would have been committed with a separate animus from that of the robbery, it could be separately punished under R.C. 2941.25(B). *Id.*

{¶28} *State v. Chaffer* provides another example. There, a bank robber substantially increased the risk of harm to his victims, separate and apart from that involved in the robbery, by moving them at gunpoint from the parking lot into the bank building, forcing them to lie on the floor where passersby could not see them, and then moving them to the bank vault. Consistent with the General Assembly's intent, multiple punishments were permitted. *See Chaffer* at ¶ 15-16.

{¶29} In *Logan*, the supreme court identified the critical consideration: Was the restraint or movement of the victim merely incidental to a separate underlying crime, or did it have a significance independent of the other offense? *See Logan*, 60 Ohio St.2d at 135, 397 N.E.2d 1345. If the kidnapping was merely incidental, then the legislative intent is to require merger. This inquiry remains the central question under the *Johnson* conduct-focused analysis. *State v. Howard*, 1st Dist. No. C-100240, 2011-Ohio-2862, ¶ 57 ("In *State v. Logan*, the Ohio Supreme Court established guidelines to determine whether the offense of kidnapping and a separate offense were committed with the same animus."); *see also State v. Stall*, 3d Dist. No. 3-10-12, 2011-Ohio-5733, ¶ 21; *State v. Helms*, 7th Dist. No. 08MA 199, 2012-Ohio-1147; *State v. Baker*, 8th Dist. No. 97139, 2012-Ohio-1833, ¶ 13; *State v. Rivera*, 10th Dist. No. 10AP-945, 2012-Ohio-1915; *State v. Simmonds*, 12th Dist. No. CA2011-05-038, 2012-Ohio-1479.

{¶30} Here, the state argues in its brief that the kidnapping of Barnaclo was committed with an animus separate from that of the aggravated robbery because Anderson and his co-defendants terrorized Barnaclo and the others in the bank. We note that the state did not indict Anderson for kidnapping under R.C. 2905.01(A)(3),

which provides that "[n]o person by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person *to terrorize*, or to inflict serious physical harm on the other victim or another." (Emphasis added.) As we held in *Cooper*, we agree that "while we do not mean to minimize the devastating impact of the aggravated robbery upon Barnaclo or the other Fifth Third Bank employees and customers," the "psychological impact of an offense upon a victim" is not dispositive of whether the perpetrator of that offense acted with a separate animus. *Cooper*, 1st Dist. Nos. C-110027 and C-110028, 2012-Ohio-555, at ¶ 17.

{¶31} In his victim-impact statement, Barnaclo did not mention being moved from his office but recalled that "when the robbers entered the bank, he was in his office and at one point, one of the suspects pointed the gun at him." As we noted in *Cooper*, Barnaclo was detained for only a brief period, he was moved only a short distance to the common area of the bank, and he was released immediately following the commission of the aggravated robbery. *See id.* at ¶ 22. Moreover, the record does not reveal any substantial increase in the risk of harm to Barnaclo separate from that involved in the commission of the aggravated robbery. *See id.* at ¶ 23. It is beyond cavil that the bank robbery was the immediate motive for the kidnapping. Kidnapping the bank employees was merely incidental to the robbery. As the indictment stated, the kidnapping was committed "for the purpose of facilitating the commission" of the aggravated robbery.

{¶32} After reviewing the record, we are persuaded that Anderson's conduct was "a single act, committed with a single state of mind." *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 49, citing *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). His conduct, and

13

that of his co-defendants, constituting the kidnapping was incidental to and in furtherance of the aggravated robbery of the bank and did not subject Barnaclo to a substantial increase in the risk of harm from that involved in the aggravated robbery.

{¶33} Therefore, we hold that Anderson did not commit the kidnapping with an animus separate from his immediate purpose of robbing the bank. The trial court should have afforded Anderson the protection of R.C. 2941.25. *See Cooper*, 1st Dist. Nos. C-110027 and C-110028, 2012-Ohio-555, at ¶ 24.

### A Bright-Line Rule for Multiple-Victim Cases?

{¶34} We acknowledge the well-recognized rule, consistent with our interpretation of R.C. 2941.25(B) and *Logan*, that "when two allied offenses are committed * * * against different victims, the offender may be sentenced for two crimes." *State v. Fields*, 97 Ohio App.3d 337, 346, 646 N.E.2d 866 (1st Dist.1994). But this analysis is ordinarily applied when there is more than one victim of the same crime. *See, e.g., State v. Skaggs*, 2d Dist. No. 10-CA-26, 2010-Ohio-5390, ¶ 7 (five separate convictions and sentences permitted because Skaggs' driving killed three people and seriously injured two others); *see also State v. Murray*, 156 Ohio App.3d 219, 2004-Ohio-654, 805 N.E.2d 156, ¶ 24 (1st Dist.).

{¶35} In *State v. Fields*, for example, this court permitted multiple punishments where the perpetrators not only committed aggravated robbery by seizing the cash register receipts of a Burger King restaurant at gunpoint, but also robbed the assistant manager of her purse and her prescription medication. *Fields* at 343 and 347.

{¶36} In *State v. Sidibeh*, the Tenth Appellate District permitted multiple punishments on two aggravated-robbery convictions where the defendant had committed separate theft offenses against two victims, Paris and Raheem. 192 Ohio App.3d 256, 2011-Ohio-712, 948 N.E.2d 995, ¶ 61 (10th Dist.). But it did not permit

multiple punishments for aggravated robbery and kidnapping where the kidnapping of each victim had been incidental to the aggravated robbery of that victim. *Id.*

{¶37} To extend this analysis to every multiple-victim/multiple-crimes case would be to adopt a bright-line rule that allied offenses affecting separate victims, regardless of the defendant's conduct, are not subject to merger and can always be punished separately. This bright-line rule would run afoul of supreme court case law and of the very text of R.C. 2941.25, which "itself instructs us to look at the defendant's conduct when evaluating whether his offenses are allied*." Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 42. In *Johnson*, the court cautioned against tests that "instruct us to jump immediately" to conclusions based upon solely abstract or formulaic assumptions. *Id.* It acknowledged that "this analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an inherently subjective determination." *Id.* at ¶ 52. As one appellate court has noted, "*Johnson* ushered in a new era where trial courts are always required to delve into the factual underpinnings of the case in order to resolve [this] issue, akin to the factual inquiries required under *State v. Logan * * *." State v. Baker*, 8th Dist. No. 97139, 2012-Ohio-1833, ¶ 13. We do not believe the General Assembly or the supreme court intended our conduct-based inquiry to begin and end by counting the number of victims.

{¶38} In cases where a defendant is found guilty of kidnapping coupled with a rape, aggravated robbery, or robbery offense, the bright-line rule would eviscerate the merely-incidental-or-independent-significance inquiry established by *Logan* and applied effectively by the courts of appeals both before and after *Johnson. E.g., State*

*v. Stall*, 3d Dist. No. 3-10-12, 2011 Ohio 5733, ¶ 21; *see also State v. Helms*, 7th Dist. No. 08MA 199, 2012-Ohio-1147, ¶ 44.

{¶39}    Finally, neither the state nor Anderson has raised or has had the opportunity to rebut the multiple-victim/multiple-crimes theory in this appeal.  The issue was not raised in Cooper's appeal to this court.  But the issue of whether to adopt the bright-line rule was raised by the state in its memorandum seeking supreme court review of our decision in *State v. Cooper*.  The state argued in favor of "a bright-line rule" that "separate convictions and sentences are permitted when a defendant's conduct results in multiple victims."    *State v. Cooper*, State's Memorandum in Support of Jurisdiction, Supreme Court Case No. 2012-0554 (Apr. 2, 2012), 4.

{¶40}    The supreme court has recently declined to accept review of *Cooper*, and has dismissed the state's appeal "as not involving any substantial constitutional question." *State v. Cooper*, Entry, Supreme Court Case No. 2012-0554  (June 20, 2012). We note that the refusal of the Ohio Supreme Court to accept any case for review is not a statement of its opinion as to the merits of the law stated by the court below. *See State v. Davis*, 119 Ohio St.3d 422, 2008-Ohio-4608, 894 N.E.2d 1221, ¶ 25.  But until our supreme court decides this issue on the merits and determines that the *Logan* analysis is to be rejected, or that the narrow, formulaic construction of R.C. 2941.25 is to be adopted, we believe that the better course is to adhere to our precedent.

### *Concurrent Sentences Not Harmless*

{¶41}    The record here reflects that Anderson stands convicted of both aggravated robbery and kidnapping.  *See* Crim.R. 32(C).  Even when the sentences imposed for allied offenses are ordered to be served concurrently, a defendant is

16

prejudiced by having more convictions than are authorized by law. *See State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31. The trial court's "imposition of concurrent sentences is not the equivalent of merging allied offenses" and is not harmless. *State v. Damron,* 129 Ohio St.3d, 2011-Ohio-2268, 950 N.E.2d 512, ¶ 17; *see also State v. Gilmore*, 1st Dist. Nos. C-070521 and C-070522, 2008-Ohio-3475, ¶ 16-17.

{¶42} The trial court should have afforded Anderson the protection of the multiple-count statute because, here, aggravated robbery and kidnapping were allied offenses of similar import subject to merger, committed in a single course of conduct with a single animus under R.C. 2941.25. Accordingly, the trial court committed plain error in sentencing him for both offenses. We, therefore, sustain his first assignment of error.

### *Failure to Notify of Postrelease Control*

{¶43} In his second assignment of error, Anderson argues that his sentences are contrary to law because the trial court failed to notify him of the imposition of postrelease control at the sentencing hearing. We agree.

{¶44} Our review of the record reveals that the trial court failed to notify Anderson at his sentencing hearing that he would be subject to a mandatory period of postrelease supervision following his release from prison, and that the parole board could impose additional prison time if he violated the conditions of that supervision. *See* R.C. 2929.19(B)(2)(c) and 2967.28(B); *see also State v. Williams*, 1st Dist. No. C-081148, 2010-Ohio-1879, ¶ 20. Because a trial court has a statutory duty to provide postrelease-control notification at the sentencing hearing, that part of the sentence imposed without it is contrary to law, even if notice was contained in the sentencing entry. *See State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 23;

17

*see also State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 26; *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, ____ N.E.2d ____, ¶ 21.

**{¶45}** Anderson was sentenced after July 11, 2006, the effective date of R.C. 2929.191. Thus we would ordinarily remedy this defect by ordering the trial court to notify Anderson of his postrelease-control obligations in accordance with R.C. 2929.191. *See State v. Fuller*, 124 Ohio St.3d 543, 2010-Ohio-726, 925 N.E.2d 123, ¶ 1; *see also State v. Brown*, 1st Dist. Nos. C-100390 and C-100310, 2011-Ohio-1029, ¶ 8-9, citing *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 26. But our resolution of the first assignment of error requires the trial court to conduct a new sentencing proceeding before imposing a prison term on only one of the offenses. Thus the remedy Anderson seeks for the postrelease-control error—to receive the statutorily mandated warnings—is subsumed in the mandated allied-offenses resentencing. *See* App.R. 12(A)(1)(c).

**{¶46}** Having found merit in the first assignment of error, we vacate the sentences imposed for aggravated robbery and kidnapping. We remand this case to the trial court for resentencing on only one of those offenses. *See State v. Whitfield*, 124 Ohio St.3d, 2010-Ohio-2, 922 N.E.2d 182, paragraphs one and two of the syllabus. We affirm the trial court's judgment in all other respects.

Judgment accordingly.

**SUNDERMANN, J.,** concurs.
**DINKELACKER, P.J.,** concurs in part and dissents in part.

**DINKELACKER, P.J.,** concurring in part and dissenting in part.

**{¶47}** Because I would not reverse on appellant's first assignment of error, I must dissent.

### *No Plain Error on Limited Record*

{¶48} Anderson knowingly and voluntarily bargained with the state to plead guilty to two separate offenses. He waived his right to further recitation of facts that may have supported an allied-offense argument. He did not raise this argument with the trial court, and he did not object to the imposition of separate sentences. As a result, the record before us is limited with respect to the facts supporting the offenses. Nonetheless, the majority declares that the two charges were allied offenses of similar import. By doing so, the majority has taken this record and declared that such a determination was an obvious mistake and amounted to plain error.

{¶49} As the majority notes, the determination of whether two offenses are allied such that Ohio law requires that a trial court merge them for sentencing is an analysis driven by considering the conduct of the defendant. In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 44, the Ohio Supreme Court held that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." The court went on to note that "[i]f the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Id.* at ¶ 49. This is the "separate animus" aspect of the test.

{¶50} For some cases, the analysis is relatively straight forward. In the case of a defendant who is found guilty of trafficking and possessing the same controlled substance, for example, little is required of the record to establish that the two charges involve the same substance. It can be established by the indictment alone, or in conjunction with a bill of particulars.

{¶51}   Other situations require a more detailed factual record in order to conduct the analysis.  The classic example of such a situation is a defendant found guilty of kidnapping and another offense like rape, felonious assault, or, as in this case, aggravated robbery.  In those cases, the court is called upon to review the details of the event—a sometimes moment-by-moment analysis—in order to make a determination.

{¶52}   The burden is on Anderson to show that he is entitled to merger pursuant to the allied-offense statute.  *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987).  The majority holds that the trial court made an obvious mistake by failing to merge the two counts for sentencing, even though Anderson made no showing that the state relied on the same conduct to support both offenses.  In fact, a finding that the conduct did not arise from the same conduct is implicit in the trial court's decision to sentence the two counts separately.  On this record, I cannot say that this was plain error.

{¶53}   In a recent case, this court had the luxury of a developed record to establish the facts of a bank-robbery case.  *State v. Chaffer*, 1st Dist. No. C-090602, 2010-Ohio-4471, citing *State v. Chaffer*, 1st Dist. No. C-980952, 1999 Ohio App. LEXIS 3376 (July 23, 1999).  This court was able to review those facts and determine

> that by their actions the perpetrators subjected [the victims] to a substantial increase in the risk of harm apart from that involved in the robbery. They moved [the victims], at gunpoint, from the parking lot into the bank building, and they forced [a victim] to lie on the floor where passersby could not see her. And to aid their escape, they moved the two to the bank vault and ordered them to remain there, significantly increasing the risk of harm to the victims.

{¶54} *Id.* at ¶ 15. This court concluded that there existed a separate animus for each offense sufficient to support separate convictions for kidnapping and aggravated robbery. *Id.* at ¶ 16.

{¶55} That kind of record does not exist in this case. The majority properly notes that Anderson failed to object or otherwise place the allied-offense issue squarely before the trial court, thereby depriving the trial court of a chance to put its reasoning on the record. The majority agrees that, in such an instance, we use a plain-error standard of review. Under a plain-error analysis, this court looks at whether the trial court's decision to sentence two counts separately was so obviously a mistake that it did not matter whether the defense counsel had complained below. The Ohio Supreme Court has admonished us to take notice of plain error only with the utmost caution, only under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Adamson*, 72 Ohio St.3d 431, 434, 650 N.E.2d 875 (1995), citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶56} Anderson has not established that the trial court made a mistake, let alone an obvious one. When he entered his guilty pleas, Anderson waived further reading of the facts supporting the convictions. By doing so, and in failing to object at that time to the separate sentences, Anderson failed to create and preserve a record that would have allowed him to meet his burden to establish that he was entitled to the benefit of the allied-offense statute.

{¶57} This court recently declined to find plain error on a record similarly underdeveloped. *State v. Wesseling*, 1st Dist. No. C-110193, 2011-Ohio-5882. In that case, the defendant entered a guilty plea to felonious assault and aggravated burglary. The record indicated that the defendant had entered the residence through the garage, opened the door of the victim's bedroom, and fired multiple shots at the victim while he

was in the bed. This court concluded that "[b]ased on the limited evidence in the record, however, we cannot conclude that the trial court committed plain error in sentencing Wesseling on both aggravated-burglary and felonious-assault charges." *Id.* at ¶ 16. Having so concluded, we overruled the assignment of error and affirmed the separate convictions.

{¶58} In effect, our ruling places the burden on the sentencing judge to actively engage in a factual inquiry of the parties to determine whether two offenses are allied. And it would seem that this would be the case any time a criminal defendant decides to enter a guilty plea to two offenses—no matter how advantageous that plea agreement may be to him at the time. Such an inquisitorial burden will have a chilling effect on plea agreements, which are a necessary part of our justice system.

{¶59} But we need not reach that result here, and our recent jurisprudence establishes this. As in *Wesseling*, the record in this case is underdeveloped due to the fact that the convictions below were the result of pleas in which the issue of allied-offenses was neither raised nor developed. Since Anderson has failed to establish, on this record, that he was entitled to the benefits of the allied-offense statute, I would overrule the first assignment of error.

### *Separate Victims*

{¶60} Though the record in this case does not, in my view, contain enough facts for the majority to undertake its analysis, I would further find that the two offenses were not allied because the counts at issue pertain to two separate victims.

{¶61} Courts in Ohio, both before *State v. Rance* , 85 Ohio St.3d 632, 1999 Ohio 291, 710 N.E.2d 699 (1999), and after *Johnson*, have held that when the same course of conduct results in multiple victims, there is a separate animus for each offense. The Second Appellate District recently noted that "separate convictions and sentences

22

are permitted when a defendant's conduct results in multiple victims." *State v. Young*, 2d Dist. No. 23642, 2011-Ohio-747, ¶ 39 (citations omitted).

{¶62} The Sixth Appellate District has held that when a driver strikes two cyclists at the same time, two separate crimes occur. *State v. O'Neill*, 6th Dist. No. WD-10-029, 2011-Ohio-5688, ¶ 34. Likewise, the court found a separate animus in *State v. Hakim*, 6th Dist. No. L-10-1153, 2011-Ohio-5525. In that case, three women in an apartment were robbed at gunpoint. The defendant was convicted of three counts of aggravated robbery and one count of aggravated burglary. The court concluded that the robberies were committed against three separate victims and, thus, were three separate criminal acts. *Id.* at ¶ 44, citing *State v. Smith*, 8th Dist. No. 95243, 2011-Ohio-3051, ¶ 79.

{¶63} The Eighth Appellate District has held that "felonious assault and aggravated robbery convictions that name different victims do not merge because they involved * * * distinct victims." *State v. Craig*, 8th Dist. No. 94455, 2011-Ohio-206, ¶ 70 (citations omitted). In another case from the Eighth District, the court addressed a case involving robbery during a poker game. *State v. Smith*, 8th Dist. No. 95243, 2011-Ohio-3051. In that case, the defendant was convicted of multiple offenses relating to each victim, including aggravated burglary, aggravated robbery, kidnapping, theft, having weapons while under disability, and various specifications. The court held that, because defendant's robbery convictions represented offenses that he had separately committed against multiple victims, they were not allied offenses of similar import. *Id.* at ¶ 79.

{¶64} One of the more telling cases decided after *Johnson* was decided by the Tenth Appellate District. *State v. Sidibeh*, 192 Ohio App.3d 256, 2011-Ohio-712, 948 N.E.2d 995 (10th Dist.). In that case, Sidibeh was indicted on one count of aggravated burglary, four counts of aggravated robbery, four counts of kidnapping, and eight counts

of robbery. The charges stemmed from Sidibeh's participation in an invasion of a home with two victims. The court reasoned that the convictions for kidnapping and aggravated robbery should have been merged, but only as to each victim. *Id.* at ¶ 61. The court reasoned that

> the kidnapping against Raheem and Paris was merely incidental to, and stemmed from the same conduct as, the aggravated robbery. Consequently, the trial court committed plain error by failing to merge (1) the kidnapping offense pertaining to Paris with the aggravated robbery offense pertaining to that victim and (2) the kidnapping offense pertaining to Raheem with the aggravated robbery offense pertaining to that victim.

*Id.* Of significance, the court did not merge all of the counts into one conviction, allowing a conviction for each victim to stand—even though it was the same conduct that resulted in the commission of both offenses.

{¶65} The line of cases runs just as strongly before *Rance* as it does after *Johnson*. The Twelfth Appellate District held that when a defendant committed the same offense against different victims during the same course of conduct, a separate animus existed for each offense. *State v. Gregory*, 90 Ohio App.3d 124, 129, 628 N.E.2d 86 (12th Dist.1993).

{¶66} In an interesting case decided before *Rance*, the Fifth Appellate District dealt with the issue of aggravated arson and involuntary manslaughter. *State v. Willey*, 5 Ohio App.3d 86, 449 N.E.2d 471 (5th Dist. 1981). In that case, the court held that "[c]ausing physical harm to an occupied structure by means of a fire, aggravated arson, and causing the deaths of victims located within the structure, involuntary

manslaughter, are offenses of dissimilar import." *Id.* In another case decided before *Rance*, the Ohio Supreme Court considered a case in which a defendant robbed both a store and the attendant. *State v. Byrd*, 32 Ohio St.3d 79, 512 N.E.2d 611 (1987). The court concluded that "[t]he robbery of the [store] was a separate act from the robbery of [the employee]. Each act required a separate animus. [The defendant] took cash from the store's cash register. He also took [the employee's] watch, ring and wallet. These were separate crimes independent of each other." *Id.* at 85.

{¶67} This court has also long held that the commission of offenses against separate victims results in a separate animus. In *State v. Wright*, 1st Dist. No. C-080467, 2009-Ohio-5474, the defendant beat his victim so severely that her unborn child died as a result. He was convicted of murder, felonious assault, and kidnapping. This court concluded that "[a]lthough the state proceeded against Wright for offenses arising from a single course of conduct, each offense involved a separate victim—the felonious assault of Anderson and the murder of her unborn child. Thus, the offenses were of dissimilar import and separate sentences were permitted." *Id.* at ¶ 62, citing *State v. Jones* (1985), 18 Ohio St.3d 116, 480 N.E.2d 408 (1985); *see also State v. Baldwin*, 1st Dist. No. C-081237, 2009-Ohio-5348; *State v. Ellison*, 1st Dist. No. C-050553, 2006-Ohio-2620; *State v. Madaris*, 156 Ohio App.3d 211, 805 N.E.2d 150 (1st Dist.2004).

{¶68} In this case, Anderson was convicted of the aggravated robbery of a corporation, Fifth Third Bank, and the kidnapping of Barnaclo. Barnaclo was not robbed, but was instead removed from his office, taken to a common area, and held at gunpoint while the robbery of the bank occurred.

{¶69} This situation is very similar to the felonious assault of the mother and the murder of the unborn child in *Wright*, to the separate robberies of the store and

employee in *Byrd*, to the arson of the building and the killing of its occupants in *Willey*, and the home invasion robberies in *Sidibeh*. Separate victims, harmed during the same act or course of conduct.

{¶70}   The majority opines that the offenses are of similar import because the kidnapping was committed only to facilitate the robbery.  But this justification is a slippery slope.  It would have made the robbery much easier if the victim had been killed.  And even *Johnson* notes, quoting the Legislative Service Commission comments to R.C. 2941.25, that "Similarly, an armed robber who holds up a bank and purposely kills two of the victims can be charged with and convicted of one count of aggravated robbery and of two counts of aggravated murder. Robbery and murder are dissimilar offenses, and each murder is necessarily committed with a separate animus, though committed at the same time." *Johnson* at fn. 2[c].

{¶71}   Suppose a hypothetical in which two individuals are walking down the street and a robber emerges from an alley, produces a weapon, and orders both into the alley.  While detaining both individuals, the robber only takes property from one of the victims.  The second victim was only held at gunpoint against his will in the alley.  It would be hard to suppose that the robber had not committed one count of aggravated robbery and one, unique count of kidnapping.  Even though the second victim was moved into the alley for the purpose of facilitating the robbery, he was the victim of a separate kidnapping.  The only difference between this hypothetical and the facts in this case is that the victim of the robbery was a corporation, not an individual.  And that is a distinction without legal consequence.

{¶72}   The question, as I see it, is where to draw the line in our post-*Johnson* jurisprudence.  In my opinion, the one remaining bright-line rule is that, if the crimes involve separate victims, there is a separate animus for each offense.  This is unlike the

cases cited by the majority where the kidnapping and robbery involved the same victim. Holding that crimes involving separate victims cannot be allied offenses is in line with common sense, and Ohio's jurisprudence from before *Rance* to after *Johnson*.

{¶73} Courts in Ohio have been struggling with the application of R.C. 2941.25 for years. From the era before *Rance*, through the *Rance* period, then the *Rance* "modification" era of *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, and now the post-*Rance* period of *Johnson*, we have attempted to adjust our analysis of the statute as its interpretation has evolved. As *Johnson* noted, the strict application of *Rance* could lead to results unintended by the General Assembly, *Johnson* at ¶ 30, and, the evolving jurisprudence had lead us far afield from the language of the allied-offense statute. *Johnson* at ¶ 41. But, as I see it, this post-*Johnson* period has seen cases that now appear to overcompensate for the sins of the past by finding allied offenses where they do not exist.

{¶74} For the foregoing reasons, I dissent from the majority's resolution of the first assignment of error. I would affirm the judgment of the trial court in all respects.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.